882 P.2d 536

**Charles E. OLSON, Plaintiff–Appellee,**

v.

**H & B PROPERTIES, INC., Defendant–Appellant.**

**No. 21316.**

Supreme Court of New Mexico.

Sept. 13, 1994.

Rehearing Denied Oct. 5, 1994.

Robert C. Floyd, Deming, for appellant.

Campbell, Pica, Olson & Seegmiller, Roger A. Stansbury, Albuquerque, for appellee.

Peter Thomas White, Santa Fe, for amicus curiae New Mexico State Engineer.

## OPINION

FROST, Justice.

Plaintiff–Appellee Olson filed a declaratory action against Defendant–Appellant H & B Properties, Inc. ("H & B") seeking an equitable reallocation of irrigation ditch usage rights in the Mimbres Valley Swarts Community Ditch Irrigation System, also known as the Swarts West Side Ditch ("Swarts ditch"). The district court granted summary judgment for Olson and eliminated three days of H & B's ditch usage. Based upon the cessation of purpose doctrine of the law of easements, we affirm.

## FACTS

Olson and H & B own adjacent real property in Grant County, New Mexico. Both own water rights appurtenant to their land, and both share ownership of the Swarts ditch which runs through their property and car-

ries water from a headgate on the Mimbres River to their respective lands.

The Swarts ditch was constructed in 1884 through the joint labor and capital of the 1884 community, Olson and H & B's predecessors in interest. In 1934, the owners of the Swarts ditch executed and recorded a document entitled "Declaration of Owner of Water Right." The 1934 Declaration recites that the community, in 1884, according to mutual agreement and mutual concessions and by their joint efforts and joint capital, organized the Swarts ditch to irrigate the lands of the community. The 1934 Declaration also allocates usage time for the ditch. It states the acreage of each field abutting the ditch, the name of its owner, and the number of days of ditch usage allotted to each field. Accordingly, from north to south on the ditch, the 1934 Declaration allocates usage of the ditch as follows: (1) McElroy 8.31 acre tract allotted 3 days, (2) McElroy 5.16 acre tract allotted one day, (3) Swarts 39.55 acre tract[1] allotted five days, (4) Carrillo 43.01 acre tract allotted three days, (4) McElroy 11.36 acre tract allotted three days, and (5) McKinn 21.46 acre tract allotted three days.

Olson and H & B are successors in interest to these lands; Olson owns the McKinn 21.46 acre tract and H & B owns the other four tracts. Before this declaratory action to reapportion ditch rights, Olson and H & B apportioned ditch usage between themselves consistent with the usage rights of their predecessors in interest under the 1934 Declaration. H & B used the ditch exclusively for fifteen consecutive days (total McElroy, Swarts, and Carrillo days), and Olson used the ditch exclusively for three days (total McKinn days). A full rotation cycle of the ditch was eighteen days.

In 1974, the Luna County district court entered a final order in *Mimbres Valley Irrigation Co. v. Salopek*, No. 6326 (N.M.Dist. Ct., Dec. 10, 1974), adjudicating water rights to the Rio Mimbres stream system and underground water basin, including the water rights appurtenant to the lands of Olson and H & B. In *Mimbres Valley*, the court determined that the 11.36 acre McElroy tract was no longer a viable irrigable field entitled to water for beneficial use and abolished H & B's water rights appurtenant to the 11.36 acre tract. *Id.*

In 1990, Olson filed the declaratory action now before us on appeal, seeking an equitable adjustment of his and H & B's rights to ditch usage. Olson argued that because H & B had lost its right to irrigate the 11.36 acre McElroy tract pursuant to the *Mimbres Valley* adjudication, H & B should also lose its three days of ditch usage allocated to the 11.36 acre McElroy tract in the 1934 Declaration. Granting summary judgment for Olson, the district court eliminated the three days of H & B's ditch rights associated with the 11.36 acre McElroy field. The total rotation cycle of the Swarts ditch was thereby reduced from eighteen to fifteen days, with twelve days allocated to H & B and three days allocated to Olson.

There is insufficient water flow in the Swarts ditch to satisfy the water rights or irrigation needs of Olson and H & B, and both parties apparently need to use alternative methods of acquiring water. Neither Olson, H & B, nor any of their predecessors in interest have entered into any agreement modifying the terms of the 1934 Declaration. The 1934 Declaration does not address the affect of changes in water rights on ditch usage.

## DISCUSSION

The only issue on appeal is whether the district court correctly eliminated three days from the Swarts ditch rotation cycle. The material facts are not in dispute.

H & B contends that the district court impermissibly divested it of its property ownership rights in the ditch by abrogating three days of its ditch usage. Citing *Holmberg v. Bradford*, 56 N.M. 401, 244 P.2d 785 (1952), and NMSA 1978, Section 73–2–7, H & B asserts that "ditches are ditches and water is water," the right to one does not follow the

---

1. The 1934 Declaration is not entirely clear regarding the size of the Swarts field; the field may have been 1.73 acres larger than indicated.

right to the other, and ditches are governed by property law rather than water law. Thus, according to H & B, although it lost its water rights appurtenant to the 11.36 acre McElroy tract, its right to three days of ditch usage associated with that tract remains in H & B's full ownership and control, subject to disposition as H & B desires (except, of course, for use to irrigate the 11.36 acre McElroy tract which no longer has appurtenant water rights). In sum, H & B contends that as a successor in interest of the original owners of the Swarts ditch, H & B's ditch rights as documented in the 1934 Declaration constitute a valuable property interest that cannot be confiscated by the court. Although H & B is correct in stating that ditch and water rights are distinct, H & B's argument is flawed because, as we discuss, it disregards basic concepts of the law of easements.

■ New Mexico cases have long recognized that ditch rights and water rights are distinct, are derived from different sources, and are governed by different rules of law. *See, e.g., Snow v. Abalos,* 18 N.M. 681, 694–97, 140 P. 1044, 1048–49 (1914). Water rights are derived from appropriation for beneficial use while ditch rights are derived from ownership of the ditch and an easement therein. *See Murphy v. Kerr,* 296 F. 536, 542–44 (D.N.M.1923), *aff'd,* 5 F.2d 908 (8th Cir.1925); *Snow,* 18 N.M. at 695, 140 P. at 1048–49. The physical structure of the ditch itself is real property, owned by the community who built it as tenants in common by virtue of their joint investment of capital and labor. *Id.* at 695, 140 P. at 1048. Successors in title to the lands of the original ditch community likewise own the ditch as tenants in common, having acquired their interest in the ditch structure with title to their land. *See id.* at 692–93, 140 P. at 1048.

■ The right of way for water flow through the irrigation ditch, as distinguished from ownership of the ditch structure itself, is an easement. *Murphy,* 296 F. at 543; *cf. Holmberg,* 56 N.M. at 407, 244 P.2d at 789 (stating community ditch is "in effect an easement for the purpose of transporting water" without distinguishing the right of way of water flow through the ditch as an

easement from the right to ownership of the ditch itself as real property); *Posey v. Dove,* 57 N.M. 200, 212–13, 257 P.2d 541, 548–49 (1953) (noting that right of way to build a ditch is an easement, but not addressing whether water flow through a ditch is an easement). We view the 1934 Declaration as creating an express easement.

■ "The extent of an easement is to be determined by a true construction of the grant or reservation by which it is created, aided by any concomitant circumstances which have a legitimate tendency to disclose the intention of the parties." *Kennedy v. Bond,* 80 N.M. 734, 736, 460 P.2d 809, 811 (1969) (quoting *Dyer v. Compere,* 41 N.M. 716, 720, 73 P.2d 1356, 1358 (1937)). An easement should be construed according to the intent of the parties. *Sanders v. Lutz,* 109 N.M. 193, 196, 784 P.2d 12, 15 (1989). When the express terms of an easement are ambiguous, the intent of the parties should be determined from the language of the granting instrument in conjunction with the surrounding circumstances. *Id.* at 194–96, 784 P.2d at 13–15.

■ The rights of one holding an easement in the land of another are measured by the nature and purpose of the easement. *Kennedy,* 80 N.M. at 737, 460 P.2d at 812. Certain easements by their nature are inherently limited in duration. An easement that is created to serve a particular purpose terminates when the underlying purpose for the easement no longer exists. Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* ¶ 9.03 (1988). This principle, known as the cessation of purpose doctrine, is based upon the assumption that the parties intended the easement to terminate upon cessation of its purpose, and it serves to eliminate meaningless burdens on land. *Id.* In a cessation of purpose case, the court first determines the particular purpose for which the easement was created. *Id.* If that purpose no longer exists, the court may terminate the easement. *See, e.g., Kearney & Son v. Fancher,* 401 S.W.2d 897, 903–07 (Tex.Civ.App.1966) (terminating easement for purpose of loading railroad cars when railroad cars no longer able to use track);

*American Oil Co. v. Leaman,* 199 Va. 637, 101 S.E.2d 540, 551–52 (1958) (extinguishing easement to use state road when road legally abandoned). When a court finds that an easement is unfit for its intended purpose, the court within its equitable power may revise the granting instrument so that the easement satisfies the purpose for which it was created. *See Sanders,* 109 N.M. at 196, 784 P.2d at 15 (affirming trial court revision of easement intended to be used as roadway by rounding off sharp, square corners of easement).

 Applying the foregoing, Olson and H & B, as successors in interest to the lands of the Swarts ditch community, own the physical structure of the ditch jointly as tenants in common. The right of way for water flowing through the ditch is an easement, *Murphy,* 296 F. at 543, the extent of which is determined by the intent of the parties to the 1934 Declaration as manifested by the language of the 1934 Declaration and the surrounding circumstances. *See Kennedy,* 80 N.M. at 736, 460 P.2d at 811. Contrary to H & B's contentions, when the district court changed the ditch rotation cycle from eighteen to fifteen days, it did not divest H & B of its real property interest in the ditch structure, which H & B still owns jointly with Olson as tenants in common. The court simply reallocated usage of the easement for water flow through the ditch in conformity with the particular purpose for which the ditch was created.

 The 1934 Declaration indicates that the purpose of the ditch was to transport water to particular tracts of land for irrigation. As evidenced by the language of the 1934 Declaration, the easement to use the Swarts ditch was created for the particular purpose of irrigating the specified tracts; an easement for three days of ditch usage was created for the particular purpose of irrigating the 11.36 acre McElroy tract. When the 11.36 acre McElroy tract lost its appurtenant water rights, three days of ditch usage could no longer be used for the particular purpose for which it was created. Therefore, pursuant to the cessation of purpose doctrine, H & B's easement for three days of ditch usage to

irrigate the 11.36 acre McElroy tract was extinguished.

Our view of the purpose of the easement granted in the 1934 Declaration for ditch use is consistent with the customs and usage of community irrigation ditches. Traditionally, community irrigation ditches were intended to benefit the whole community, *see Candelaria v. Vallejos,* 13 N.M. 146, 156, 81 P. 589, 593 (1905), and their usage was historically apportioned in relation to the acreage ownership and irrigation needs of the individual community members. *See Snow,* 18 N.M. at 692, 140 P. at 1048. Eliminating the three days of ditch usage associated with the 11.36 acre McElroy tract provides more access to the ditch for irrigation of other tracts of land, benefitting the ditch community as a whole by allocating ditch time in closer approximation to irrigation needs. Since H & B now has less water rights, if it were allowed to continue use of the ditch for 15 out of 18 days to irrigate its other fields, and Olson continued to be limited to using the ditch three of 18 days, then H & B's use would be proportionately increased. The district court correctly eliminated three days from the Swarts ditch rotation cycle, and its resolution is equitable under the circumstances.

 Our decision today is not inconsistent with NMSA 1978, Section 73–2–7 nor *Holmberg,* both of which address circumstances not presented by this case. Section 73–2–7, first enacted in 1882, 1882 N.M.Laws, ch. 30, § 1, states:

All acequias, public or private, when completed, shall be the property of the persons who may have completed such acequias or ditches, and no person or persons who may desire to use the waters of such acequias or ditches shall be allowed so to do without the consent of a majority of the owners of such acequias or ditches, and upon payment of a share proportionate to the primary cost of such acequia or ditch to the amount of the land proposed to be irrigated, or the quantity of water proposed to be used. . . .

The statute applies to newcomers to the community ditch, those who did not acquire ditch ownership by contributing to the ditch's construction or by inheriting such an interest

**500**

through a predecessor in title. Because Olson and H & B acquired their interests in the ditch through their predecessors in title, whose rights in the ditch presumably derive successively from the 1884 original ditch community, they are not newcomers to the ditch, and Section 73–2–7 has no application to the circumstances presented here.

In *Holmberg,* shareholders in a community irrigation ditch corporation petitioned the court to redistribute shares in the corporation in proportion to shareholder's water rights and irrigated acreage. 56 N.M. at 403, 244 P.2d at 787. Recognizing the distinction between water rights and ditch rights, the court refused to readjust shares in the community ditch corporation. *Holmberg* is distinguishable because it does not address reallocation of rights to use an easement for water flow through a community ditch. Further, we disavow dicta in *Holmberg* to any extent that it may be construed to contradict our analysis in this case.

Our holding today only addresses easements for water flow through a community irrigation ditch; cases regarding changing the course or dimensions of community irrigation ditches are not applicable and are not affected by our decision today. *See, e.g., Archibeck v. Mongiello,* 58 N.M. 749, 276 P.2d 736 (1954); *Posey v. Dove,* 57 N.M. 200, 257 P.2d 541 (1953).

### CONCLUSION

Because there are no genuine issues of material fact and Olson is entitled to judgment as a matter of law, the district court's award of summary judgment and equitable relief is affirmed. *See* SCRA 1986, 1–056(C) (Repl.Pamp.1992) (stating grounds for summary judgment).

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and BACA, J., concur.