This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**CITY OF RIO RANCHO,**

Plaintiff-Appellant,

v.                                                                    **NO. 29,510**

**CLOUDVIEW ESTATES, LLC,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Montgomery & Andrews, P.A.
Randy S. Bartell
Sharon T. Shaheen
Santa Fe, NM

for Appellant

Foster, Rieder & Jackson, P.C.
J. Douglas Foster
Travis G. Jackson
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

At issue in this appeal is the nature and extent of a drainage easement that covers the entirety of a ten-acre parcel of land located within the City of Rio Rancho, New Mexico. The City of Rio Rancho (the City) appeals the district court's order reversing the City's administrative decision that denied Cloudview Estates, LLC's (Cloudview) request to vacate the drainage easement on the parcel. The City also appeals the district court's order granting summary judgment in favor of Cloudview on Cloudview's inverse condemnation claim and granting summary judgment in favor of Cloudview as to all of the City's claims against Cloudview. We reverse the district court's reversal of the City's administrative decision. We also reverse the district court's grant of summary judgment, both as to Cloudview's inverse condemnation claim and as to the City's claims.

**BACKGROUND**

The property at issue is a ten-acre parcel of land labeled "Parcel F" on the recorded final plat (the Plat) of the Vista Hills West Unit 1 (VHWU1) subdivision in Rio Rancho, New Mexico, dated October 18, 1985. AMREP Southwest, Inc. (Amrep) was the original owner and subdivider of all property within the VHWU1 subdivision boundaries. The entirety of Parcel F is labeled as a drainage easement on the Plat. Parcel F is also the subject of a dispute between the City and Amrep regarding their intent in designating Parcel F as a drainage easement. *See City of Rio Rancho v.*

2

*AMREP Southwest, Inc.*, 2010-NMCA-___, ___ N.M. ___, ___ P.3d ___ (No. 28,709, June 7, 2010).

Cloudview purchased Parcel F in November 2004 from Martin and Theresa Mares who themselves had purchased the property from Amrep in March 2004. On July 1, 2005, Cloudview submitted an application to the City's Planning and Zoning Board (PZB) to vacate the drainage easement and create a thirty-lot subdivision on Parcel F.

The City initially approved the proposed subdivision; however, after protests by neighboring property owners who claimed that Parcel F had been represented to them as permanent open space when they purchased their properties, the PZB withdrew its approval for the proposed subdivision and denied Cloudview's application to vacate the easement. Cloudview appealed the PZB's decision to the City's Governing Body (CGB). The CGB upheld the PZB decision. The CGB determined that, at the time of the original platting of VHWU1, Amrep and the City intended that Parcel F be set aside as undevelopable open space. The CGB further determined that "[g]iven the twenty-year lapse of time, the complete build-out of the underlying subdivision, and the relative scale of development sought by Cloudview . . . development of Parcel F at this time would violate the planning principles dictated by City law in effect now and at the time of the approval of the original plat."

Following the CGB's denial of its appeal, Cloudview filed a complaint against the City in federal district court alleging that the City's refusal to vacate the drainage easement on Parcel F deprived Cloudview of due process and requested review of the City's administrative decision denying Cloudview's application to vacate the easement. The federal district court dismissed Cloudview's claims without prejudice.

After the federal court's dismissal of Cloudview's complaint, the City filed a complaint in district court, naming both Amrep and Cloudview as defendants. In the complaint, the City requested a declaratory judgment determining the ownership of Parcel F and the nature and extent of the encumbrance of the drainage easement on Parcel F. In response to the City's complaint, Cloudview filed several counterclaims against the City. Two of these counterclaims are at issue in this appeal. First, Cloudview requested judicial review by the district court of the City's administrative decision denying Cloudview's application to vacate the easement. Second, Cloudview made a claim of inverse condemnation alleging that the City's denial of Cloudview's application to vacate the drainage easement had resulted in a taking of Cloudview's property for public use without just compensation. Cloudview moved for partial summary judgment on the City's claims against Cloudview and also requested summary judgment on its inverse condemnation claim. The district court reversed the City's administrative decision denying Cloudview's application to vacate the drainage

easement and granted summary judgment in favor of Cloudview on Cloudview's claim of inverse condemnation and granted summary judgment in favor of Cloudview on the City's claims against Cloudview. As noted above, the dispute between Amrep and the City is the subject of a separate appeal. We discuss each of the district court's rulings regarding Cloudview and the City in turn.

**DISCUSSION**

**I.      District Court's Reversal of the City's Administrative Decision**

Sitting in its appellate capacity, the district court reversed the City's administrative decision that had denied Cloudview's request that the City vacate the drainage easement over Parcel F. The district court held that the City's decision was contrary to law and not supported by substantial evidence. The district court did not state the underlying facts that were the basis of its decision.

The City argues that the district court erred in reversing the City's administrative decision because (1) Cloudview's notice of appeal to the district court was untimely, (2) the court improperly reweighed evidence and made findings of fact, and (3) the City's decision was based on substantial evidence and in accordance with the law. We reverse the district court's ruling because we conclude that the City's decision was in accordance with the law and based on substantial evidence; therefore, we do not address the City's remaining arguments.

**A.      Standard of Review for Appeals From Administrative Decisions**

This Court will "conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. "The district court may reverse an administrative decision only if it determines that the [city] . . . acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the [c]ity did not act in accordance with the law." *Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 10, 135 N.M. 30, 84 P.3d 78 (filed 2003).

We review the City's decisions based on a review of the whole record. *Id.* ¶ 11. However, "a reviewing court may not substitute its judgment for that of the [c]ity." *Id.* On review, "[w]e view evidence in the light most favorable to the [c]ity while also considering contravening evidence." *Id.* "[W]e may only evaluate whether the record supports the result reached, not whether a different result could have been reached." *Id.* "The party seeking to overturn the [c]ity's decision must establish that there is no substantial evidence in the record to support the decision." *Id.*

**B.      The City's Decision Is Supported by Substantial Evidence and Not Contrary to Law**

6

The CGB held a hearing on November 9, 2005, to consider Cloudview's appeal of the PZB's decision denying Cloudview's application for vacation of the drainage easement. After consideration of the arguments and evidence presented at the hearing, the CGB upheld the PZB's decision. The CGB issued a set of findings in support of its decision.

The findings issued by the CGB included findings that substantial evidence had been submitted to allow the CGB to conclude that, at the time of the approval of the Plat, Amrep and the City intended that Parcel F be used as open space and that Parcel F continue to have a role in the City's provision of open space areas. The CGB also found that the City ordinances required all developable property within a subdivision to be identified at the time of platting and that Parcel F was not identified as developable property on the Plat of VHWU1. Finally, the CGB found that, given the twenty-year lapse of time, the now complete build-out of the underlying subdivision, and the relative scale of development sought by Cloudview, development of Parcel F at the time of Cloudview's application would violate the planning principles dictated by City law.

The record shows that the CGB based its findings on the following evidence: (1) Parcel F was designated as open space on the preliminary plat submitted to the City for preliminary approval of the subdivision; (2) a letter, written in 1985, from

7

Dan Holmes, Cinfran Engineering, Inc., to Loring Spitler, City of Rio Rancho, stating that certain areas on the preliminary plat with difficult topography had been left in their natural state in areas set aside as open space; (3) a letter from Charles M. Easterling, City Engineer, to the same Mr. Spitler, also written in 1985, commenting that the open space parcels were of concern from a drainage and maintenance standpoint; (4) minutes from the City's PZB meetings in 1985 indicating that VHWU1 plat approval was based on the developer's representations that forty acres of open space would be provided within the subdivision; (5) the Plat of VHWU1, identifying as drainage easements the same forty acres identified as open space on the preliminary plat; (6) an affidavit from Michael Springfield, senior planner for the City's development department in 1985, stating that the drainage easement on Parcel F was intended to satisfy Amrep's obligation to convey open space for the VHWU1 subdivision; (7) VHWU1 covenants of record providing that easements shall run with the land and be binding on all parties unless a majority of the owners of the VHWU1 lots vote to change such restrictions; (8) City subdivision restrictions in existence when Cloudview applied for the vacation of the easement on Parcel F; (9) subdivision regulations in existence at the time the Plat was approved requiring all developable land susceptible to subdivision or development to be identified; (10) supporting documentation regarding a replat of Parcel H in VHWU1 identifying the original

8

planned use of Parcel H as open space (Parcel H was labeled identically to Parcel F on both the preliminary and final plats); (11) City land inventories listing Parcel F as open space; (12) statements by numerous homeowners in VHWU1 stating that Amrep representatives had assured them at the time of their purchase that Parcel F would remain open space; and (13) the fact that several homeowners in VHWU1 stated they had paid a premium for their lots because it adjoined Parcel F.

As noted above, the party seeking to overturn the City's decision "must establish that there is no substantial evidence in the record to support the decision." *Gallup Westside Dev., LLC*, 2004-NMCA-010, ¶ 11. On appeal, however, Cloudview does not specifically address the City's findings or the evidence relied upon by the City in arriving at its decision. Rather, Cloudview asserts that the "controlling issue on this appeal is the district court's ruling that the City has 'taken' Cloudview's property, entitling Cloudview to summary judgment on its claim for 'inverse condemnation.'" Cloudview claims that the district court's ruling on the inverse condemnation claim renders the City's administrative decision moot and leaves the inverse condemnation claim as Cloudview's sole remedy in this matter.

Cloudview also asserts that it was a bona fide purchaser of Parcel F, subject only to the drainage easement over the entirety of the parcel, and that fee title to the

property carries with it the right to make economic, beneficial use of the property. We address Cloudview's inverse condemnation claim below.

With regard to the administrative appeal, however, based on a thorough review of the whole record, and considering the evidence in a light most favorable to upholding the City's decision, we conclude that while there is evidence that might support a different conclusion, there is substantial evidence in the record to support the City's decision.

The parties do not dispute that the City has the authority to approve or deny proposed subdivisions within its boundaries and to approve or deny requests for vacation of easements in the City's possession. We determine, therefore, that the City did not fail to act in accordance with the law in denying Cloudview's request to vacate the drainage easement. Finally, we find no evidence in the record to show that the City acted fraudulently, arbitrarily, or capriciously. Because we conclude that there is substantial evidence in the record to support the City's decision, that the City acted in accordance with the law, and that the City did not act fraudulently, arbitrarily, or capriciously, we reverse the district court's ruling overturning the City's administrative decision.

**II.     Summary Judgment as to Cloudview's Inverse Condemnation Claim**

The district court granted summary judgment in favor of Cloudview on Cloudview's claim of inverse condemnation. The court ruled that, as a matter of law, the City's actions in denying Cloudview's request to vacate the drainage easement on Parcel F resulted in a taking of Cloudview's property and, therefore, Cloudview was entitled to recover just compensation. The City argues that summary judgment was inappropriate because issues of material fact exist as to whether Cloudview possessed the right to develop the property in the manner it had requested.

**A.    Standard of Review for Summary Judgment**

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (filed 2006).

The party seeking summary judgment need only make a prima facie showing that he is entitled to summary judgment, after which the burden shifts to the party opposing the motion "to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 113 N.M. 331, 334-35, 825 P.2d 1241, 1244-45 (1992). The nonmoving party need not convince the district court

that he has evidence to support all the elements of his case; rather, the nonmoving party must merely show that one or more factual issues are contested. *Bartlett v. Mirabal*, 2000-NMCA-036, ¶ 17, 128 N.M. 830, 999 P.2d 1062. "The facts are considered in the light most favorable to the party opposing summary judgment." *Zarr v. Wash. Tru Solutions, L.L.C.*, 2009-NMCA-050, ¶ 9, 146 N.M. 274, 208 P.3d 919.

**B.    Inverse Condemnation**

In New Mexico, the remedy of inverse condemnation is codified in NMSA 1978, Section 42A-1-29 (1983), which states that inverse condemnation is available to a property owner when an entity authorized to exercise the right of eminent domain takes the owner's property for public use without making just compensation. In order to succeed in its claim of inverse condemnation, Cloudview must make a threshold showing that (1) it was the legal owner of the property at the time of the taking, and (2) that the City effected an uncompensated taking of a property right that Cloudview possessed. We discuss each threshold element in turn.

**C.    Legal Ownership of Parcel F**

In its district court complaint, the City claimed that fee title to Parcel F was vested in the City pursuant to NMSA 1978, Section 3-20-11 (1973), which states that a municipality automatically acquires fee title to land within its boundaries when such

land is designated "for public use" on an endorsed and filed plat. The City claimed that the designation of the entirety of Parcel F as a drainage easement was intended by both Amrep and the City to designate Parcel F for public use; therefore, by operation of Section 3-20-11, fee title to Parcel F passed to the City upon the recording of the Plat. The City also argues that Cloudview is not a bona fide purchaser because the nature and extent of the drainage easement over Parcel F gave Cloudview constructive notice of a defect in fee title to the property.

The district court found Cloudview to be the legal owner of Parcel F based on its determination that, at the time of its purchase of the property, Cloudview had neither actual nor constructive notice that any party, other than the owner of record, claimed ownership of the property. The district court, therefore, concluded that Cloudview is the legal owner of the property because it was a bona fide purchaser for value without notice.

We note that the City does not argue or present any evidence that Cloudview had actual knowledge that any party other than the owner of record claimed ownership of Parcel F. Therefore, for the purposes of this appeal, we assume that Cloudview was without actual knowledge of any potential defects in fee title to the property at the time of its purchase.

13

Similarly, the City does not argue that any documentation existed in the property record that would have given Cloudview constructive notice that the City, or any party other than the owner of record, claimed ownership of the property. The City does not dispute that it had not recorded its claim of ownership of the property in any manner other than the recording of the Plat itself. The Plat, however, does not clearly and unequivocally dedicate Parcel F to the City, nor does it clearly indicate that Parcel F is to be dedicated for public use, thereby giving notice to a subsequent purchaser that title might have transferred to the City pursuant to Section 3-20-11. We conclude, therefore, that at the time of its purchase of Parcel F, nothing in the property record provided Cloudview with constructive notice of any potential defects in fee title to the property.

On the other hand, the City does argue that the nature and extent of the drainage easement over Parcel F would have led an ordinarily prudent person to investigate the title of the property further, and had Cloudview done so, it would have discovered defects in the title to Parcel F. The City argues that, following this line of reasoning, Cloudview had constructive notice of a defect in the fee title to the property. In support of its position, the City cites *Dunne v. Petterman*, 52 N.M. 284, 287-88, 197 P.2d 618, 621-22 (1948), and *Hunt v. Ellis*, 27 N.M. 397, 401, 201 P. 1064, 1065 (1921), for the proposition that a purchaser has constructive notice of a defect in title

14

if the purchaser has knowledge of facts that would lead an ordinarily prudent person to investigate further, and further investigation would lead to knowledge of the infirmities in the title.

In *Dunne*, the Court found that a purchaser had constructive notice of defects in title to property where the title presented by the seller to the purchaser showed that it was fraudulent on its face due to "erasures as well as insertions written in different colored ink and different hand writing." 52 N.M. at 286-87, 197 P.2d at 619. In *Hunt*, the Court found that a purchaser did not have constructive notice of defects in title despite the occupancy of the property by a third party who also claimed title. 27 N.M. at 402-03, 201 P. at 1065-66. The Court found that constructive notice was not given to subsequent purchasers because the third party's occupancy was not sufficiently different from the use that party had made of the property prior to that party's alleged purchase. *Id.* at 403, 201 P. at 1066.

In the present case, the City was not in open possession of the property in a manner that would have given notice of its claimed ownership to a subsequent purchaser. In fact, the City states that Parcel F was and is vacant land in use as open space. Similarly, as we noted above, there was nothing on the face of the only recorded instrument (the Plat) that would create a duty in a subsequent purchaser to inquire further into the fee title. Additionally, prior to its purchase of Parcel F,

Cloudview discussed its intention to purchase the parcel with the City, and at that time, the City did not give Cloudview any indication that it considered itself, or anyone else other than the owner of record, to be the owner of the property. Based on these facts, we conclude that, while the nature and extent of the drainage easement might be sufficient to provide a subsequent purchaser with notice that development of Parcel F could be problematic, it would not provide constructive notice of a defect in fee title.

We conclude that Cloudview had neither actual nor constructive notice that the legal owner of the property might be other than the owner of record at the time of purchase. We therefore determine that Cloudview was a bona fide purchaser of the property without notice and is the current legal owner of the property.

**D.    The City's Alleged Taking**

We next discuss whether the City's denial of Cloudview's request for vacation of the drainage easement resulted in a taking. The district court granted summary judgment in favor of Cloudview, stating that, as a matter of law, the City's actions in denying Cloudview's request to vacate the drainage easement resulted in a taking of Cloudview's property that entitled Cloudview to recover just compensation. The City argues that summary judgment was inappropriate because issues of material fact exist as to whether Cloudview possessed the right to develop the property in the manner it

16

had requested, and if Cloudview did not possess such a right, then the City's actions were not a taking. We agree that summary judgment was inappropriate in this matter.

As noted above, in order to sustain a claim for inverse condemnation, Cloudview must demonstrate that its title to Parcel F included the right of which it claims to be deprived. In the current case, the City's denial of Cloudview's request for vacation of the drainage easement over Parcel F deprived Cloudview of the right to develop the parcel. The City argues that because of the drainage easement over the entirety of Parcel F, Cloudview never actually possessed an undisputed right to develop the parcel.

Cloudview does not dispute that it purchased Parcel F with the clear understanding that the parcel was encumbered in its entirety by a drainage easement. Cloudview also acknowledges that it understood at the time of purchase that any future development of the property was conditioned upon the City's vacation of the drainage easement. Cloudview admits that it was within the City's authority to decline to vacate the drainage easement. In fact, Cloudview states that had the City merely declined to vacate the easement, no taking would have resulted and Cloudview's only remedy would have been an appeal of the City's administrative decision.

17

Despite its understanding that any development of Parcel F was predicated upon the City's vacation of the drainage easement, Cloudview claims that the City's rejection of Cloudview's request to vacate the drainage easement deprived Cloudview of any economically viable use of the property. Cloudview bases its claim on the fact that, in one of the findings upon which the City based its decision, the City stated that, at the time of the approval of the Plat, Amrep and the City intended that Parcel F be used as open space and that the requirement for open space was a condition of the City's approval of the Plat. Cloudview argues that it bought Parcel F subject only to a drainage easement and that the City changed the character of that easement by declaring it to be open space. Cloudview further asserts that this change in the easement effected a taking of Cloudview's property rights in Parcel F.

The City, on the other hand, argues that Amrep (the original developer of VHWU1) and the City intended at the time of the platting of VHWU1 in 1985 that the drainage easement over Parcel F was to be used as open space; therefore, the character of the easement was not changed by the City's administrative decision. The City further asserts that the nature and character of the drainage easement gave Cloudview constructive notice that the intended use of the easement was for purposes other than drainage. As evidence of this constructive notice, the City points to the fact that the

18

drainage easement covers the entirety of the ten-acre parcel, and the parcel is obviously an elevated area that could serve no function for drainage.

We conclude that the nature and extent of the easement to which Parcel F was subject at the time of Cloudview's purchase of the property is dispositive in this case.

The nature and extent of an easement is "determined by a true construction of the grant or reservation by which it is created, aided by any concomitant circumstances which have a legitimate tendency to disclose the intention of the parties." *Olson v. H & B Props., Inc.*, 118 N.M. 495, 498, 882 P.2d 536, 539 (1994) (internal quotation marks and citation omitted). "An easement should be construed according to the intent of the parties." *Id.* "When the express terms of an easement are ambiguous, the intent of the parties should be determined from the language of the granting instrument in conjunction with the surrounding circumstances." *Id.*

In *AMREP Southwest*, 2010-NMCA-___, ¶ 25, the companion to the present case, we concluded that "the parties' intent in creating a pervasive easement over the entirety of Parcel F is reasonably and fairly susceptible to different constructions, and that these constructions present genuine issues of material fact that must be submitted to an appropriate fact finder." Cloudview purchased the property as a bona fide purchaser for value without notice but subject to the easement over the entirety of Parcel F. The nature and extent of that easement must still be determined in the

companion to the present case, *AMREP Southwest*. Thus, summary judgment is inappropriate as to Cloudview's claim of inverse condemnation.

**III.    Summary Judgment in Favor of Cloudview as to the City's Claims**

The district court granted summary judgment in favor of Cloudview as to all of the City's claims against Cloudview. The district court based its holding on its decision in its April 2008 order granting summary judgment in favor of Amrep on the same claims. In *AMREP Southwest*, we found summary judgment to be inappropriate in that case because issues of material fact existed. *Id.* Accordingly, we also find summary judgment on those counts to be inappropriate in the present case.

**CONCLUSION**

For the reasons set forth above, we reverse the district court's orders and remand the case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**ROBERT E. ROBLES, Judge**