IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-078

Filing Date: June 13, 2011

Docket No. 29,412

HORACE L. BOUNDS, JR.,

       Plaintiff-Appellant,

v.

RAY HAMLETT, NANCI KELLEHER,
NORM WHEELER, CINDY LEE, and
WILLIAM LEE,

       Defendants-Appellees,

and

THE SAN LORENZO COMMUNITY
DITCH ASSOCIATION,

       Nominal Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY
J.C. Robinson, District Judge

Law Office of Beverly Singleman
Beverly J. Singleman
Mesilla Park, NM

for Appellant

Domenici Law Firm, P.C.
Charles N. Lakins
Albuquerque, NM

for Appellees

Gary K. King, Attorney General
DL Sanders, Special Assistant Attorney General

1

Santa Fe, NM

for Amicus Curiae Office of the State Engineer

New Mexico Legal Aid, Inc.
David Benavides
Santa Fe, NM

for Amicus Curiae New Mexico Acequia Association

**OPINION**

**WECHSLER, Judge.**

**{1}**     This appeal involves an election contest between two competing boards of commissioners of the San Lorenzo Community Ditch Association (the Association). As relevant to the appeal, Plaintiff Horace L. Bounds, Jr., along with Wigwam Ranch, LLC (Wigwam Ranch), and Boots & Spurs, LLC (Boots & Spurs), sought a declaratory judgment that they were duly elected commissioners at a December 3, 2007 election of the Association and that Defendants Ray Hamlett, Nanci Kelleher, and Norm Wheeler, elected at a January 4, 2008 meeting, were not commissioners entitled to act on behalf of the Association.

**{2}**     The district court held that neither group of commissioners was duly elected. In doing so, it concluded that a "hybrid" form of voting in an acequia election in which voting may be based on either water rights or ditch rights was contrary to NMSA 1978, Section 73-2-14 (1921), and the New Mexico Supreme Court's holding in *Wilson v. Denver*, 1998-NMSC-016, 125 N.M. 308, 961 P.2d 153.  It further concluded that a 1982 stipulated judgment between Plaintiff and the Association was not lawful because the stipulated judgment attempted to create a hybrid voting scheme and does not comply with the alternatives allowed by statute. It ordered the Association to hold a new election, allowing members to vote either by casting one vote per member, reflecting the tenancy in common in the ditch, or by voting in proportion to the member's water rights on the ditch.  Plaintiff appeals.

**{3}**     We hold that the district court correctly held that the 1982 stipulated judgment was not lawful and that the bylaws controlling the December 2007 election were improperly based on the 1982 stipulated judgment that created a hybrid form of voting rights that was contrary to both Section 73-2-14 and *Wilson*.  We do not address the district court's actions concerning the January 4, 2008 election and the special election because they are not before us in this appeal.  We affirm.

**BACKGROUND**

**{4}**     The Association is a community acequia association organized under NMSA 1978, Sections 73-2-1 to -68 (1874, as amended through 2006).  It adopted its first official set of

2

bylaws in 1981, which provided that "[e]ach member will have the same number of votes as acres of land with water rights." At that time, Plaintiff owned 203.8 acres of land with water rights and had "ditch rights" totaling 141 hours and 20 minutes, which he acquired from his predecessors in interest, his father, Horace L. Bounds, and Wigwam Ranch. Ditch rights are the amount of time during a water cycle that an individual water user may take water from the ditch.

{5} In 1982, Plaintiff filed a declaratory judgment action against the Association to clarify voting practices. He did not name any of the individual members of the Association as defendants. The case resulted in a stipulated judgment, confirming Plaintiff's ditch rights of 141 hours and 20 minutes, and stating his voting rights to be "in proportion to his interest in [the] ditch or in proportion to the number or amount of his water rights (203.8 acres), whichever is larger."

{6} In 1989, the Association adopted a second set of bylaws that again provided that voting rights would be based on water rights. There is no evidence in the record of any objections to these bylaws. In 1999, Plaintiff transferred 46.17 of his 203.8 acres of water rights from the San Lorenzo Community Ditch to another location and, as a result, thereafter owned 157.63 acres of water rights on the ditch. After this transfer, the Association did not readjust any of its member's ditch rights, including those of Plaintiff.

{7} In 2001, the Association held an election in which voting was based on water rights as required by the 1989 bylaws. At that time, Plaintiff, through his attorney, informed the board of commissioners of the 1982 stipulated judgment. The board indicated that, based on the 1982 stipulated judgment, it understood Plaintiff to "prefer ditch rights to water rights[,]" and "that all future dealings of the . . . Association will be done by ditch rights." In February 2002, the board of commissioners adopted new bylaws that based voting rights on ditch rights, a departure from all previously recorded bylaws. The change was prompted by communications from Plaintiff and his attorneys leading commissioners to believe that compliance with the 1982 stipulated judgment was required by law and to prevent litigation.

{8} On December 3, 2007, the Association held a meeting, called by Plaintiff, and conducted an election based on the 2002 bylaws under which a member's voting rights were in proportion to the member's ditch rights. Plaintiff, Wigwam Ranch, LLC (represented by Jo Bounds), and Boots & Spurs, LLC (represented by Steve Bounds) were elected commissioners. Plaintiff was also elected mayordomo.

{9} On January 4, 2008, the Association held another meeting called by members who did not believe that the December 3, 2007 meeting was proper. Plaintiff did not attend. The members present conducted an election based on a recalculation of each member's ditch rights or water rights, whichever provided the member the greater number of votes. Defendants Hamlett, Wheeler, and Kelleher were elected commissioners, and Defendant William Lee was elected mayordomo.

**{10}** Plaintiff, Wigwam Ranch, and Boots & Spurs filed this action for declaratory judgment in response to the January 4, 2008 election. After trial, the district court ruled that neither set of commissioners was duly elected and entitled to act on behalf of the Association. It held that both elections improperly employed hybrid voting systems contrary to Section 73-2-14 and *Wilson* and were therefore invalid. The district court further held that the 1982 stipulated judgment was not binding on the Association's members. The district court ordered the Association to conduct a special election with voting based either by each member casting one vote reflecting the tenancy in common interest of the members of the ditch or by each member voting in proportion to the member's water rights in the ditch.

**{11}** In Plaintiff's appeal of these rulings, he raises three issues: (1) whether the Association's voting rights may be based disproportionally upon hours of ditch time because of the members' agreement and the 1982 stipulated judgment; (2) whether the 1982 stipulated judgment is binding on the Association and its members; and (3) whether the district court improperly subjected the 1982 stipulated judgment to collateral attack. Each issue presents a question of law that we review de novo. *See Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 14, 149 N.M. 162, 245 P.3d 1214 (holding that statutory interpretation is a question of law that is reviewed de novo); *Roybal v. Lujan de la Fuente*, 2009-NMCA-114, ¶ 23, 147 N.M. 193, 218 P.3d 879 (holding that the district court's determination as to the preclusive effect of a judgment is reviewed de novo).

**VOTING RIGHTS IN ASSOCIATION ELECTIONS**

**{12}** Plaintiff's first argument on appeal asks this Court to overturn the district court because the district court did not properly recognize Plaintiff's voting rights in the Association's December 3, 2007 and January 4, 2008 elections. Plaintiff argues that "ditch rights" are an easement interest and are, therefore, a valid method of apportioning votes in acequia elections under Section 73-2-14 and *Wilson*. According to Plaintiff, under the second type of ditch interest recognized in *Wilson*, Association voting may be disproportionate because an easement in a ditch measured by hours of ditch time "generally results in disproportionate voting." Further, Plaintiff contends that a February 2, 1962 document signed by the owners of water rights in the ditch and notarized created vested rights in the stated ditch times such that, based on *Holmberg v. Bradford*, 56 N.M. 401, 244 P.2d 785 (1952), and *Olson v. H & B Properties, Inc.*, 118 N.M. 495, 882 P.2d 536 (1994), the district court could not reallocate Plaintiff's ditch rights to be in direct proportion to water rights to be more fair. The district court held that the Association's voting methods used at the December 3, 2007 and the January 4, 2008 elections were flawed because of the 1982 stipulated judgment and overturned the results of the elections. We address Plaintiff's arguments only as necessary to review the district court's decision.

**{13}** Section 73-2-14 controls the conduct of election of acequia officers in Grant County, New Mexico. It reads in its entirety as follows:

> The election for acequia or community ditch officers under this article

4

shall be held by the outgoing commissioners under rules and regulations to be prescribed by them. Only those having water rights in the acequia or ditch and who are not delinquent in the payment of their assessments, and fail to [sic] proffer such delinquent assessment at the time they offer to vote, shall be allowed to vote; but votes may be cast by written proxy and shall be in proportion to the interest of the voter in the ditch or water, or in proportion to the number or amount of his water rights.

*Id.* (alteration in original).

**{14}** Plaintiff's concern about the district court's decision overturning the elections requires us to interpret Section 73-2-14. When interpreting a statute, we seek to fulfill the legislative intent. *Wilson*, 1998-NMSC-016, ¶ 36. We look first to the plain language of the statute in accordance with its ordinary meaning. *Id.* ¶ 16.

**{15}** The central issue in this case is the manner in which voting rights may be apportioned. We thus specifically address the language that states that votes "shall be in proportion to the interest of the voter in the ditch or water." When we look to the plain language of Section 73-2-14, it states that votes shall be cast "in proportion to the interest of the voter in the ditch *or* water, or in proportion to the number or amount of his water rights." Section 73-2-14 (emphasis added). *See Wilson*, 1998-NMSC-016, ¶ 17 (stating that the lack of a comma between "ditch" and "water" indicates a disjunctive meaning while the comma following "water" separates an explanatory phrase). This language of the statute indicates that these voting methods exist as alternatives. *Id.* ("As a rule of construction, the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise." (internal quotation marks and citation omitted)). Nothing in Section 73-2-14 suggests that an election may be conducted using a combination of methods. *Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 34, 140 N.M. 77, 140 P.3d 498 (stating that we will not read language into a statute that is not there when the statute makes sense as written).

**{16}** Our reading of the relevant cases supports this analysis. In *Holmberg*, a new landowner sought to compel a community ditch association to reallocate the shares of the community ditch company "in proportion to the number of acres irrigated by each land owner from the waters of [the] ditch." *Holmberg*, 56 N.M. at 403, 244 P.2d at 787. An existing ownership statute provided that acequias were the property of the persons who constructed them, and others could not use the waters without the consent of the majority of the owners and upon payment of a proportionate share of the cost of construction, or for the quantity of water to be used. *Id.* at 404, 244 P.2d at 788. Our Supreme Court held that requested relief was inappropriate because the relief requested asked the Court to strike down the ownership statute and destroy vested property rights. *Id.* at 407, 244 P.2d at 790-91. The Court discussed the history of the ownership statute as emanating from the recognition of two methods of acquiring a property right in a community ditch: through participation in construction or by consent and purchase from those who did. *Id.* at 405, 244

P.2d at 788. The Court distinguished the voting statute that has the same language as Section 73-2-14, by stating that it "merely provides two alternative methods of voting[.]" *Holmberg*, 56 N.M. at 405, 244 P.2d at 788.

{17} In *Olson*, the Court addressed the ditch rights of water users to a community ditch. *Olson*, 118 N.M. at 497, 882 P.2d at 538. The owners of the ditch had executed a declaration allocating usage time. *Id.* The final order in a water rights adjudication reduced the defendant's irrigable acres and water rights, and the plaintiff sought a declaratory judgment that the defendant's ditch rights should be correspondingly reduced. *Id.* The Court acknowledged the long-recognized distinction between water rights and ditch rights, stating that "ditch rights are derived from ownership of the ditch and an easement therein," whereas water rights stem from "appropriation for beneficial use." *Id.* at 498, 882 P.2d at 539. It stated that ownership of the ditch is a real property interest in the physical structure of the ditch, which is owned by those who constructed it and their successors in interest as tenants in common. *Id.* According to the Court, the owners' declaration created an easement in the water flow through the ditch. *Id.* The Court held that the reallocation of the defendant's ditch rights to conform to the purpose of the ditch did not divest the defendant of a property right in the ditch structure. *Id.* at 499, 882 P.2d at 540.

{18} In *Wilson*, the Court considered a protest to the way acequia elections were conducted. *Wilson*, 1998-NMSC-016, ¶ 1. The controlling statute at issue in that case was NMSA 1978, Section 73-3-3 (1921), but the Court found it "identical in relevant part to [Section 73-2-14]." *Wilson*, 1998-NMSC-016, ¶ 24. The Court clarified its earlier ruling in *Olson*, and discussed three types of "interests" in a ditch that, in addition to proportionate voting based on water rights, may provide for proportionate voting rights under Section 73-2-14—an ownership interest, an easement interest, and the interest in being a water user. *Wilson*, 1998-NMSC-016, ¶¶ 33-34. As the Court explained, the first, an ownership interest as a tenant in common or joint tenant, stems from the contribution made by the individual or the individual's successors in interest to the construction of the ditch. *Id.* ¶ 33. The second relates to "holding an easement in the land of another" that is "measured by the nature and purpose of the easement" and is "substantially dependent on water rights." *Id.* (internal quotation marks and citation omitted). The third is an interest as a water user that is "held equally by all those with water rights in the ditch." *Id.* ¶ 34. Ultimately, the Court held that "[v]oting in ditch elections may be conducted based proportionately on water rights, based proportionately on ditch ownership, or based on a majority of those using the ditch for the distribution of water." *Id.* ¶ 43.

{19} Historically, a community ditch has the flexibility to use the voting method for election of its officers that it believes is best to fulfill its particular purposes. *Id.* ¶ 43. Section 73-2-14 provides two alternatives, "in proportion to the interest of the voter in the ditch or water, or in proportion to the number or amount of his water rights." These alternatives derive from the distinction between water rights and ditch rights that has long been recognized in our case law. *See Olson*, 118 N.M. at 498, 882 P.2d at 539 ("New Mexico cases have long recognized that ditch rights and water rights are distinct, are derived

6

from different sources, and are governed by different rules of law."). *Olson* worked from this distinction between water rights and ditch rights and included within ditch rights both ownership and easement rights. *Id.* *Wilson* further defined the ditch interest to also include the interest in being a water user, held equally by those with water rights in the ditch. *Wilson*, 1998-NMSC-016, ¶ 34. But *Wilson* continues to make clear that voting rights derive either through an interest in the ditch or from an interest in the water flowing through the ditch. *Id.* ¶ 17. Moreover, *Wilson* recognizes that voting methods exist as alternatives, stating that the statute "contains plain language and that its plain language, properly construed, should be understood to provide *alternative* methods of voting for ditch association officers." *Id.* (emphasis added). *See Holmberg*, 56 N.M. at 405, 244 P.2d at 788 (stating that the predecessor statute to Section 73-2-14 "merely provides two alternative methods of voting").

**{20}** With the predicate that the plain meaning of Section 73-2-14 requires voting based on one of the alternatives set forth in *Wilson*, we turn to the two elections at issue to consider whether the voting methods satisfy these requirements. We address the December 3, 2007 election in its historical context.

**{21}** The Association's initial bylaws adopted in 1981 called for members to vote in Association elections based on their water rights. In 1982, Plaintiff brought a declaratory judgment action against the Association, alleging that by virtue of historical practice and the 1962 document of the Association's members setting forth the ditch time of the members, Association voting should be conducted on the basis of ditch rights rather than water rights. No members of the Association besides Plaintiff were parties to the declaratory judgment action. The action ended in a stipulated judgment providing as to voting that Plaintiff's "voting rights for the election of . . . Association officers is in proportion to his interest in said ditch or in proportion to the number or amount of his water rights . . ., whichever is larger." The 1989 bylaws again stated that voting rights were to be based on water rights. However, as a direct result of communications from Plaintiff and his attorney, the Association changed its bylaws in 2002 in an attempt to comply with the 1982 stipulated judgment and to prevent additional litigation.

**{22}** However, the 1982 stipulated judgment creates a hybrid voting scheme that is facially invalid. The 1982 stipulated judgment allows Plaintiff to vote in Association elections either in proportion to his interest in the ditch or in proportion to the number or amount of his water rights, depending on which interest is larger. In addition, the 1982 stipulated judgment gave Plaintiff the power to decide the manner in which he could vote regardless of the manner in which other members were allowed to vote. For example, if the board of commissioners decided to base voting on the number of acres in the ditch with water rights attached, the 1982 stipulated judgment would nevertheless permit Plaintiff to vote based on other interests. While *Wilson* holds that Section 73-3-3, and thereby Section 73-2-14, contemplates alternative methods of voting, nothing permits combining alternative methods into another method in a single election. A hybrid voting method is one that does not follow a single method of apportioning votes in an acequia election and, therefore, does not comport

7

with Section 73-2-14 and *Wilson*. The 1982 stipulated judgment was therefore contrary to Section 73-2-14 and *Wilson* and therefore is invalid.

**{23}** We acknowledge that the Association's 2002 bylaws did not provide for a hybrid voting method and based voting solely on ditch rights. However, the district court concluded that the December 3, 2007 election could not stand because of the hybrid voting method established by the 1982 stipulated judgment. Specifically, the district court found that the Association changed the voting method in the bylaws to one based on ditch rights contrary to all previously existing bylaws because of communications from Plaintiff and his attorney that led the Association to believe that the 1982 stipulated judgment required the change in order to prevent litigation.

**{24}** Plaintiff does not contest the district court's factual findings. With such facts, the 2002 bylaws were improperly based on the 1982 stipulated judgment. The district court's findings indicate that the changes to the bylaws occurred because Plaintiff and his attorneys led the commissioners to believe compliance with the stipulated judgment was required by law and in order to prevent litigation, which presumably would be initiated by Plaintiff. The Association acquiesced and complied with the 1982 stipulated judgment by, presumably, adopting the voting method that reflected Plaintiff's greater interest as between water rights and ditch rights, that of voting on the basis of ditch rights. Substantial evidence supported the district court's conclusion to overturn the December 3, 2007 election in this regard. *See Malissa C. v. Matthew Wayne H.*, 2008-NMCA-128, ¶ 20, 145 N.M. 22, 193 P.3d 569 (stating that "we will not disturb factual findings that are supported by substantial evidence").

**{25}** Although Plaintiff frames the issues before us in the context of disproportionate voting, because we conclude that the December 3, 2007 election was not validly conducted because of the hybrid method underlying the voting process, we need not specifically address this argument. We pause briefly, however, to mention Plaintiff's argument that the 1962 document provided him vested rights. The document lists water rights, work performed, and assessments as of specified recorded dates. For "the present owners of water rights" on the ditch as of February 2, 1962, it states "the time to which each is entitled to receive water." Nothing in the document discusses voting. Rather, it concludes with the ditch time available to the owners of water rights on the ditch. To the extent that the document can be understood to include voting rights, from its allocation of ditch time based on water rights, voting would follow water rights as well. As a result, the 1981 and 1989 bylaws that base voting rights on water rights are consistent with the 1962 document. If anything alters vested rights based on the 1962 document, it would be the 1982 stipulated judgment that sought to create voting based on Plaintiff's choice of voting rights based on his greater rights regardless of the rights of the other members. *Cf. Holmberg*, 56 N.M. at 407, 244 P.2d at 790-91 (holding that reallocating interest in a community ditch to new landowners would destroy vested property rights of others).

**{26}** At the January 4, 2008 meeting, the Association based voting on each member's

8

ditch time or water rights, whichever gave the member the greater number of votes. The district court also held that this manner of voting was an invalid hybrid method. It granted declaratory judgment in Plaintiff's favor declaring that the officers elected at the January 4, 2008 meeting were not duly elected and were not entitled to act on behalf of the Association. Defendants do not appeal from the district court's judgment, and, as a result, we do not review the judgment in this regard. *See State ex. rel. Children, Youth & Families Dep't v. John D.*, 1997-NMCA-019, ¶ 5, 123 N.M. 114, 934 P.2d 308 (stating that appellate review is limited to orders that were appealed).

**1982 STIPULATED JUDGMENT—RES JUDICATA AND COLLATERAL ATTACK**

**{27}** In his second and third arguments on appeal, Plaintiff contends that the district court should have followed the 1982 stipulated judgment because it was entitled to res judicata effect and because it was not subject to collateral attack.

**{28}** "Res judicata bars relitigation of the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577 (internal quotation marks and citation omitted). We consider whether the 1981 case and this case involved the same parties or their privies. In particular, we consider whether the individual Defendants in this case are in privity with the Association as the defendant in the 1981 case.

**{29}** In 1981, Plaintiff sued the Association only; he did not name or serve as a party any individual members of the Association. The 1982 stipulated judgment was approved by the attorneys on behalf of their clients, Plaintiff and the Association. In this case, Plaintiff named the individual Defendants in their complaint as members of the Association. Plaintiff also named the Association as a nominal Defendant. As we have discussed, the controversy involves the voting rights of members of the Association to elect the Association's board of commissioners.

**{30}** The determination of whether parties are in privity "requires a case-by-case analysis." *Id.* ¶ 4. A court must determine whether a party is "so identified in interest with another" that the party "represents the same legal right." *Lewis v. City of Santa Fe*, 2005-NMCA-032, ¶ 15, 137 N.M. 152, 108 P.3d 558 (internal quotation marks and citation omitted). We perceive the legal rights of the Association as a party to differ from those of its members with regard to voting in Association elections.

**{31}** The interest, and concomitant legal right, of the Association is that the election be legally held and binding. *See* § 73-2-12 (requiring that officers of ditch corporations be elected biannually); § 73-2-21 (defining powers and duties of ditch corporation officers). The members, on the other hand, in addition to interests that may be common to the Association, have the legal right to vote in the election. *See* § 73-2-15 (stating that when commissioners neglect to call an election in reasonable time, those entitled to vote may call an election in the same manner as the commissioners). The Association does not vote, and

9

although it has an interest in ensuring that the members' votes are legally cast, that interest is not the same as a member's interest and right to participate in the Association's governance by voting to elect the Association's governing board. As this case illustrates, voting rights bear upon a member's rights in the acequia because the Association's board of commissioners has the authority to determine the allocation of water from the acequia. *See generally* § 73-2-21. Although the Association did not remove the right to vote of any member by entering into the 1982 stipulated judgment, it altered the members' voting rights, which necessarily diluted the rights of some members. Thus, because the rights of the Association and its members did not coincide, the Association could not have protected the legal rights of all its members in the action. The Association and the members do not share the required privity, and res judicata does not apply to the 1982 stipulated judgment.

**{32}** We next address Plaintiff's collateral attack issue. Generally, district court judgments are presumptively correct. *Porter v. Mesilla Valley Cotton Prods. Co.*, 42 N.M. 217, 224, 76 P.2d 937, 941 (1937). This presumption is so strong that a final judgment is not open to collateral attack if it is based on a mistake of law, *Acequia Del Llano v. Acequia De Las Joyas Del Llano Frio*, 25 N.M. 134, 142-43, 179 P. 235, 237 (1919), or even if the final decision is unconstitutional. *See In re Philip M. Kleinsmith*, 2005-NMCA-136, ¶ 11, 138 N.M. 601, 124 P.3d 579 (stating that with strictly limited exceptions, the collateral bar rule applies even when the underlying order is unconstitutional).

**{33}** However, "judgments entered by the consent of the parties and upon stipulations have only been regarded as immune from collateral attack by the parties themselves, or those in privity with them." *Lewis*, 2005-NMCA-032, ¶ 14. *See Myers v. Olson*, 100 N.M. 745, 748, 676 P.2d 822, 825 (1984) ("Properly authorized and acknowledged consent judgments and judgments rendered on stipulations are conclusive of all claims determined therein and may not be collaterally attacked *by the parties thereto*." (emphasis added)); *Johnson v. Aztec Well Servicing Co.*, 117 N.M. 697, 700, 875 P.2d 1128, 1131 (Ct. App. 1994) (observing that a judgment entered into by consent "is not subject to collateral attack *by a party or a person in privity*" (emphasis added) (internal quotation marks and citation omitted)). As we have discussed, the individual Association members who are Defendants in this case are not in privity with the Association as the party defendant to the 1982 stipulated judgment. As a result, the member Defendants in this case may properly challenge the 1982 stipulated judgment in this case.

**SPECIAL ELECTION**

**{34}** After determining that the Association did not validly conduct the December 3, 2007 and the January 4, 2008 elections, the district court ordered the Association to conduct a special election in a manner not previously stated in any of the Association's bylaws. The district court ordered the members to agree as to one of two alternative methods of voting: by casting one vote per member representing the tenancy in common in the ditch, or by voting in proportion to the members' water rights in the ditch. Plaintiff's appeal does not challenge this action, and Defendants did not cross appeal. We therefore do not address this

10

aspect of the district court's decision in this appeal. *See John D.*, 1997-NMCA-019, ¶ 5.

**CONCLUSION**

**{35}** For the foregoing reasons, we affirm the district court's ruling.

**{36}** In addition, the Court notes that, on its own initiative, it requested briefing from the Office of the State Engineer and the New Mexico Acequia Association as amicus curiae in this appeal. We thank amicus curiae for their presentations to the Court.

**{37} IT IS SO ORDERED.**

 

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

 

**RODERICK T. KENNEDY, Judge**

 

**MICHAEL E. VIGIL, Judge**

**Topic Index for *Bounds v. Hamlett*, Docket No. 29,412**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-CC | Collateral Attack |
| CP-RJ | Res Judicata |
| | |
| **GV** | **GOVERNMENT** |
| GV-CD | Conservancy Districts |
| GV-EL | Elections |
| GV-WS | Water and Waste Systems |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-IR | Irrigation |
| NR-WL | Water Law |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-RC | Rules of Construction |