754 P.2d 516

**Pansy NORTHRIP, Plaintiff–Appellee,**

v.

**Victor R. CONNER,
Respondent–Appellant.**

**No. 17381.**

Supreme Court of New Mexico.

May 4, 1988.

Rehearing Denied June 2, 1988.

George M. Scarborough, Santa Fe, for plaintiff-appellee.

Jose A. Sandoval, Espanola, Adele Graham, for respondent-appellant.

## OPINION

SOSA, Senior Justice.

Plaintiff-appellee, Pansy Northrip (Northrip), filed suit for damages and injunctive relief against defendant-appellant, Victor R. Conner (Conner). Conner counterclaimed. Although the property that was the subject of the suit was located in Rio Arriba County, and although they resided in that county, the parties waived venue and the trial was heard in Santa Fe County.

## ISSUES: NORTHRIP

On Northrip's part, the issues involved (1) a sale by Northrip of 10.68 acres of her land to Conner, (2) Northrip's claim that she had reserved an easement on the transferred land in the form of a "loop road" (disputed by Conner), (3) her claim that Conner built earthworks, dikes and other obstructions on the loop road in order to keep her from using the road, (4) her claim that Conner committed the tort of assault and battery upon her, and (5) her plea for a permanent injunction requiring Conner to remove all obstructions from the road and to give Northrip free access thereto.

## ISSUES: CONNER

On Conner's part, the issues involved (1) his actions to quiet title in his name to the 10.68 acres, (2) his action for fraud, in which he alleged that before the sale Northrip had promised him to remove the loop road from his property but that she later refused to do so, (3) his action against Northrip for her alleged diversion of an arroyo onto his property so that his property became periodically flooded, (4) his complaint for assault and battery against Northrip, (5) his action against Northrip for her breach of the warranty deed, and (7) his action for damages suffered as a result of his having to protect himself from being constructively evicted from his land by Northrip.

## PRE–TRIAL INJUNCTION AND FINAL JUDGMENT

The trial court issued an injunction ordering that "all easements herein at issue shall remain open and free from obstructions during the pendency hereof * * *. [and that] * * * Conner shall remove from the easements ... any and all obstructions placed therein and restore said easements to the condition they were prior to his attempts to frustrate Plaintiff's peaceful use and enjoyment thereof * * * *" Trial was held on January 28, 1986, and judgment was rendered as follows: (1) Connor was permanently enjoined from going upon the loop road so long as Northrip owned the land adjoining Conner's, (2) Conner was permanently enjoined from "assaulting, battering, harrassing or otherwise bothering Pansy Northrip," (3) Northrip was awarded damages on her claim of assault and battery in the sums of $190 actual damages, $1,000 pain and suffering, $5,000 punitive damages, and $3,500 attorney fees plus costs, and (4) except for his action to quiet title, all of Conner's counterclaims were dismissed. Title to the 10.68 acres was quieted in Conner subject to the loop road easement, which Northrip was free to use until she sold the adjoining land.

## FACTS

Before selling the 10.68 acre tract to Conner, Northrip had owned a total of 15.6 acres. The property abutted U.S. Highway 84, "the Chama Highway," and could be entered by one of three access roads. For our purposes the two significant roads were the "loop road," which led to a barn used by Northrip to repair trucks, and a fifty-foot strip along the extreme northern portion of the property, used by utility trucks and other public vehicles when working on the property. Conner purchased the northern 10.68 acres on June 28, 1982. Both he and Northrip executed certain documents prepared for them by Northrip's real estate agent, Walter Gould. The first two documents were designated "Offer to Purchase Agreement," and differed from one another in the amount of the purchase price that was inserted from the first offer to the second, and in the fact that the second offer contained the words, "Existing access roads are to remain unchanged." Each document contained the words, "Seller is to grade the easement

along the north fence and an access road extending to the south for the purchaser and blade over gopher mounds." On the same day, June 28, 1982, the parties executed a real estate contract, a "memorandum of contract," a warranty deed and a special warranty deed, all four of which contained the language, "Subject to any existing easements of record."

Shortly after closing the sale the parties began to experience disagreements as to the meaning of the language just quoted insofar as that language applied to the loop road. Conner had originally (before the closing) told Gould that he did not want the loop road on his property, and Gould responded by saying he did not think the loop road came north far enough to touch Conner's land. Further, Gould assured Conner that Northrip would move the loop road further south, and that, at any rate, Northrip shortly intended selling the remainder of her property. After several months of living next to each other, the parties became increasingly vituperative with respect to the issue of the loop road. Conner had a survey made and discovered that the road was in fact on his property (an undisputed fact at trial and on appeal). Consequently he began to place obstacles of one sort or another in a position calculated to block Northrip's use of the road. Northrip's son responded by cutting down Conner's newly planted fence, and bulldozed a road through Conner's property. Someone turned Conner's horses loose upon the highway. Conner threw sand at Northrip, hit her in the hand with a thrown rock, and shot his rifle into her shovel and between her feet. Northrip threw a fence post at Conner and struck him on the foot. Most of the exhibits at trial are concerned not with the real estate issues, but with police reports and witnesses' statements concerning threats and counter-threats between the parties.

It is undisputed that there were no easements of record binding Northrip's or Conner's property. It is likewise undisputed that Northrip in 1977 diverted an arroyo that had passed under the Chama Highway and turned it at a ninety degree angle so that it ran some two hundred feet from the southern terminus of the land that Conner would eventually purchase. Conner's expert witnesses testified (1) that it would be possible for trucks to enter and leave Northrip's land without using the loop road, (2) that the soil content of Northrip's land was identical to that of Conner's, suggesting that Northrip could just as easily have moved the loop road to a position on her own land, and (3) that Northrip's diversion of the arroyo caused periodic flooding of Conner's land, building and improvements.

### LEGAL ARGUMENT: NORTHRIP, TRIAL COURT

■ There were essentially two legal positions taken in arguing this case. The first was that of Northrip's attorney, which was equivalent to a substantial portion of the trial court's conclusions of law. This position consists of ignoring the clear language of the deed by looking at the factual circumstances surrounding the deed—as the trial court put in its conclusions of fact and law—to look at matters as they exist "on the ground." For example, the trial court found that "the looped roadways were evident upon the ground;" and "the point and direction of diversion [of the arroyo] were evident upon the ground." As for the easement(s), the trial court likewise found that although the fifty-foot strip and the loop road were not recorded, "both .. were plainly visible on the ground." Since the trial court thus concluded that Conner was charged with knowledge of the position of the loop road, the arroyo, and the loop road *as an easement*, he can not now be heard to complain about the position of these encumbrances, or claim that the warranty deed absorbed his knowledge of such encumbrances through the doctrine of merger. The remainder of Conner's counterclaims were dismissed "for want of evidence."

■ Needless to say, Northrip's counsel on appeal cites cases which support the trial court's judgment. He argues that one is entitled to look beyond the four corners of a deed in interpreting the document, by considering "the circumstances surround-

ing the transaction." *H.J. Griffith Realty Co. v. Hobbs Houses, Inc.,* 68 N.M. 25, 28, 357 P.2d 677, 679 (1960). That case, however, was based on a Tennessee case, *Laughlin v. Wagner,* 146 Tenn. 647, 244 S.W. 475 (1922) which was predicated on their being two different constructions within the language of a deed. In the case before us, that is not the fact. Northrip also argues on appeal that she is entitled to the court's award of attorney's fees, stating that her seeking an injunction permits such an award. Northrip is incorrect on this point. The rule in New Mexico with respect to an award of attorney's fees is stated in *Gregg v. Gardner,* 73 N.M. 347, 360, 388 P.2d 68, 77–8 (1963). *See also, Gurule v. Ault,* 103 N.M. 17, 702 P.2d 7 (1985). The trial court erred in awarding Northrip attorney's fees.

█ Northrip next argues against Conner's contention that collateral estoppel precludes a civil trial of the issue of Northrip's complaint for assault and battery. Conner had earlier been found innocent by a magistrate's court of the criminal charge of assault and battery for hitting Northrip in the hand with the thrown rock. Northrip is correct to assert that collateral estoppel does not apply. The parties in the criminal case on the one hand and in the civil suit on the other were not the same, and the subject matter of the civil suit is different from that of the criminal case. Thus, Northrip prevails on this issue. *See Edwards v. First Federal Sav. & Loan Ass'n,* 102 N.M. 396, 696 P.2d 484 (Ct.App. 1985); *Torres v. Village of Capitan,* 92 N.M. 64, 582 P.2d 1277 (1978).

█ Finally, Northrip argues that the trial court's award of punitive damages was proper. Punitive damages may be granted only when the conduct of the tortfeasor is maliciously intentional, oppressive, or committed recklessly or with a wanton disregard to plaintiff's rights. *Hood v. Fulkerson,* 102 N.M. 677, 680, 699 P.2d 608, 611 (1985), *Lujan v. Pendaries Properties, Inc.,* 96 N.M. 771, 774, 635 P.2d 580, 583 (1981). Finally, an award of punitive damages is discretionary with the trial court and will be upheld if substantial evi-

dence supports such an award. *Thompson v. Ruidoso–Sunland, Inc.,* 105 N.M. 487, 493, 734 P.2d 267, 273 (Ct.App.1987). Our study of the record does not show that the trial court abused its discretion in awarding punitive damages. Conner's shooting his rifle between Northrip's feet and into her shovel, and his throwing a rock at her hand was malicious, intentional, reckless, and committed with wanton disregard to plaintiff's rights. The trial court's judgment as to paragraph 3 of the judgment is upheld in its entirety, except as to the award of attorney's fees.

## LEGAL ARGUMENT: CONNER, COURT OF APPEALS

On November 2, 1987, the court of appeals rendered an advisory committee opinion in which it partially affirmed and partially reversed the trial court's judgment. Most significantly, the court of appeals would have reversed the trial court's finding of an easement in the loop road belonging to Northrip, and would have reversed the trial court's award of attorney's fees. The trial court would have been affirmed in its dismissal of Conner's counterclaims, upholding, however, the trial court's quieting of title to the 10.68 acres in Conner's name. We follow the court of appeals' reasoning as to the easement, and hold that Northrip has no easement in the loop road.

█ As was undisputed at trial, there were no easements of record anywhere on the entire property. Thus the trial court's finding that the easements "were evident upon the ground" is irrelevant. All of the documents signed by the parties at closing contained the proviso, "Subject to any existing easements *of record.*" Therefore, the place to seek the meaning and effect of any easements is not "upon the ground," but within the four corners of the warranty deed, which is the controlling document insofar as the final intention of the parties is concerned. All previous documents and all previous oral discussion merge into the deed, and thus it is within the four corners of the deed that one must look in order to find an interpretation of the easements in question. *El Sol Corp v. Jones,* 97 N.M.

645, 642 P.2d 1104 (1982). Barring any ambiguity, the existence of which has not been shown here, the trial court may not go outside the deed itself to interpret the parties' intentions. *Perea v. Martinez*, 95 N.M. 84, 619 P.2d 188 (1980); *Komadina v. Edmondson*, 81 N.M. 467, 468 P.2d 632 (1970). The warranty deed here is a model of clarity and precision. After reciting the description of the property, it states "Subject to any existing easements of record," of which there were none. What the parties meant by such language is not ascertainable from the deed itself, but that is an oversight as to which the court can not speculate. We are bound by the language in the deed itself, and by that language Northrip is given no right to an easement in the loop road. We therefore hold that, since the survey has now determined that the loop road is on Conner's property, Northrip may no longer use the road or consider it as her easement across Conner's property. The trial court is reversed as to this issue.

### HOLDING and JUDGMENT

Accordingly, we hold as follows:

(1) The loop road is on Conner's property and Northrip owns no easement thereto. The trial court is reversed as to this issue for the reasons set forth above;

(2) Title to the 10.68 acres is quieted in Conner's name;

(3) The trial court's finding of assault and battery as stated in its judgment, and the award of punitive damages are affirmed.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.