784 P.2d 12

Dave SANDERS, Plaintiff–Appellant
and Cross–Appellee,

v.

Carmen LUTZ and Dave Garrett,
Defendants–Appellees and
Cross–Appellants.

No. 18102.

Supreme Court of New Mexico.

Dec. 11, 1989.

William A. L'Esperance, Albuquerque,
for plaintiff-appellant and cross-appellee.

George H. Perez, Bernalillo, for defendants-appellees and cross-appellants.

## OPINION

BACA, Justice.

Following trial before the district court of Sandoval County to determine the location of an easement and resolve a claim of intentional infliction of emotional distress, both parties appeal the judgment of the court. Sanders, appellant and cross-appellee, plaintiff below, appeals the judgment regarding the placement of the easement, maintaining that it was in error because the judgment rendered the easement unsafe and because he was not granted damages for intentional infliction of emotional distress. Defendants below, Lutz and Garrett, cross-appeal, arguing that the court erred in increasing the size of the easement.

FACTS

In 1976, Lutz acquired property consisting of tracts 71 and 72 located near Algodones. The land is bordered by State Road 85 to the west and a railroad right-of-way to the east. At that time, Sanders' predecessor in interest acquired property east of

the Lutz property, which included an easement running through tract 71 that provided access to the highway. The predecessor in interest and Lutz entered into an agreement defining the location of the easement. This agreement, which was recorded in December 1979 and amended in February 1980, placed the entrance of the easement on tract 71. Sanders subsequently purchased this property adjacent to the Lutz parcels, while Garrett purchased a portion of tract 71 from Lutz. Evidence, in the form of the "Hugg plat," indicated that in fact there were two easements—the easement described in the agreement that ran over tract 72, and an existing roadway easement running along tract 71. The deed described the easement as "the correct legal description of the easement which was the subject matter of the easement agreement is that certain EXISTING ROADWAY EASEMENT. The existing roadway easement on the Hugg plat is on tract 71." However, confusion apparently arose because the plat indicates that an easement also crosses tract 72. Apparently, Lutz intended the designation of an easement over tract 72 as an agreement reserving a separate easement over that tract, which she subsequently sold to a person not a party to this suit. Sanders' predecessor in interest testified that the easement on tract 72 was distinct from the one claimed by Sanders; he inadvertently placed the entrance to the Sanders' easement on tract 72.

The easement, as it existed, was unworkable for its intended purpose—it had sharp, square corners that were difficult to traverse and was thus unfit for use as a roadway. The trial court found that this problem could be resolved by rounding off the sharp and narrow corners.

The parties had disagreed over the placement and extent of the easement, and evidence was presented that the disagreement boiled over into petty squabbling, with both parties bickering and taking unneighborly actions against one another. Sanders maintained that this squabbling, with its accompanying manifestations of physical interference, exacerbated an existing psychological condition, causing him damages.

We address three issues on this appeal: (1) whether the trial court correctly determined the location of the easement over tract 71 rather than on tract 72; (2) whether the court abused its discretion by increasing the size of the easement by rounding off the corners; and (3) whether the court erred by refusing to award damages to either party for intentional infliction of emotional distress. We affirm the decision below.

## I. THE EASEMENT

### A. Was It Properly Located on Tract 71?

Sanders apparently is claiming that the trial court erred in locating the easement on tract 71; he contends that the Hugg plat clearly shows that the entrance is located on tract 72. On appeal, we examine the record to determine whether the verdict is supported by substantial evidence, i.e. if it contains evidence that a "reasonable mind might accept as adequate to support a conclusion." *Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 168, 692 P.2d 1315, 1317 (1984). We resolve disputed facts in favor of the prevailing party below, indulging all reasonable inferences in support of the verdict. *Id.*

■ Lutz and Garrett contend that Sanders did not raise this issue in his docketing statement, and thus waived his right to have the issue considered on appeal. However, the docketing statement is not jurisdictional, and it is within our discretion to consider error properly preserved below and presented in appellant's brief, although omitted from the docketing statement. *Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 731, 779 P.2d 99, 108 (1989). Accordingly, we will consider the merits of the issue raised by plaintiff.

■ An easement should be construed according to its express and specific terms as a manifestation of the intent of the parties. If the grant or reservation is ambiguous, the parties' intention must be determined from the language of the instrument as well as from the surrounding cir-

cumstances. *Kennedy v. Bond,* 80 N.M. 734, 736, 460 P.2d 809, 811 (1969).

The evidence indicates that the easement was granted by express agreement of Lutz' and Sanders' predecessor in interest, and the location was defined in the granting instrument as traversing tract 71. Further, in the amended easement agreement, the description of the easement is cross-referenced to the Hugg plat and identified as the "existing roadway easement" as marked on the plat; the plat shows this easement as running through tract 71. Evidence indicates that the circumstances surrounding the creation of the easement support this view. Lutz apparently intended, as part of a future conveyance of tract 72 to a third party, to reserve a right to an easement across tract 72 for herself; the evidence supports a conclusion that the easement across tract 72 is entirely distinct and separate from the easement relevant to this proceeding.

Plaintiff, nevertheless, maintains that the location of the easement was always on tract 72, and that it was on tract 72 when he acquired the property. Evidence submitted at the trial indicates that the entrance of the easement was erroneously located on tract 72 by the original grantee, and its placement there was not the intent of the parties. In any case, although the parties' conduct may be indicative of their intent and may assist the court in filling in missing or ambiguous details, "it does not permit a disregard of the language in the conveyance." *Martinez v. Martinez,* 93 N.M. 673, 676, 604 P.2d 366, 369 (1979). We find that the language of the grant, in combination with the circumstances surrounding the grant of the easement as evinced during the trial, provides adequate support for the trial court's conclusions.

Thus, despite Sanders' contentions to the contrary, the record supports the court's finding that the easement runs across tract 71 only, and we affirm the court's determination on this issue.

Sanders argues that the placement of the easement on tract 71 is unsafe, and that the easement should be revised. However, we find adequate support in the record for a determination that the easement as defined by the trial court is safe, and we reject this contention.

## B. *Did the Court Err in Expanding the Easement and Rounding Off the Corners?*

Lutz and Garrett, in their cross-appeal, argue that the trial court erred by reforming the easement. They claim that the court exceeded its authority by increasing the size of the easement when it decided to round off its corners, and cites us to *Brooks v. Tanner,* 101 N.M. 203, 207, 680 P.2d 343, 347 (1984), and *Posey v. Dove,* 57 N.M. 200, 212, 257 P.2d 541, 548 (1953), for the proposition that an easement cannot be altered and a servient estate further burdened except by the consent of the owner. Lutz and Garrett maintain that the easement agreement clearly and unambiguously recites the dimensions of the easement. Although the agreement, which reads: "The use of the easement shall be as a roadway for normal residential building construction purposes, and shall include the right to make such installations and improvements as may be reasonably necessary to such use[,]" may be read as creating an ambiguity, it refers only to·a use restriction on the easement. It is not to be read as a mandate to enlarge its scope. According to Lutz and Garrett, the agreement unambiguously indicates that the easement's corners are square, and therefore, by the rule articulated in *Northrip v. Conner,* 107 N.M. 139, 142–43, 754 P.2d 516, 519–20 (1988), a court is restricted to the four corners of the deed and may not go beyond it to determine the parties' intentions. They contend that Sanders had notice of the dimensions of the easement as specified in the agreement, and therefore is bound by those limitations. *See Germany v. Murdock,* 99 N.M. 679, 681, 662 P.2d 1346, 1348 (1983). Sanders contends that, by rounding off the corners of the easement, the court only effectuated a *de minimis* encroachment on the servient estate, and that the trial court possessed the authority to revise the easement, citing *Dyer*

*v. Compere,* 41 N.M. 716, 73 P.2d 1356 (1937).[1]

In construing an agreement creating an easement, a court must determine and give effect to the intent of the parties. 28 C.J.S. *Easements* § 26 (1941). In determining the intent of the parties, the court may examine the surrounding circumstances that shed light on the parties' intent. *Dyer,* 41 N.M. at 720, 73 P.2d at 1358. However, "[b]arring any ambiguity [in the granting instrument], ... the trial court may not go outside the deed itself to interpret the parties' intentions." *Northrip v. Conner,* 107 N.M. at 143, 754 P.2d at 520.

■ We find that the agreement granting the easement is ambiguous, and the trial court properly resorted to an examination of the circumstances surrounding the creation of the easement to determine the parties' intention. The easement agreement states the dimensions of the grant, and it is expressly laid out with square corners. However, the same instrument states that the easement is to be used as a roadway. The trial court determined that, as laid out with square corners, the easement could not be used for this purpose. This created an ambiguity—although the sentence in the instrument was intended as a use limitation, it also evinced the parties' intent that the area should be fit for use as a road. A court has equitable power to interpret an easement, and, under the circumstances, we hold that it properly exercised this authority by rounding off the corners. *See Sedillo Title Guaranty, Inc. v. Wagner,* 80 N.M. 429, 432, 457 P.2d 361, 364 (1969).

A comparison of the facts presented for this appeal with those in *Northrip* and *Germany* demonstrate the propriety of this holding. In *Northrip,* the deed was silent as to *any* easements; the court refused to go beyond the instrument to find that the parties intended an easement, despite the experience of the parties. In *Germany,* a case presenting an issue similar to

that first addressed by this opinion, the court determined that the *location* of the easement was unambiguously referred to in the instrument, and refused to modify the agreement to conform to the practice of the parties. In the present case, however, the instrument is ambiguous—if we were to accept Lutz' argument, Sanders would be left with a right of access unfit for its intended purpose. We, therefore, hold that the trial court properly acted within the scope of its authority by determining the intent of the parties and revising the written instrument accordingly.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Sanders appeals the trial court's denial of his claim for damages for the intentional infliction of emotional distress. As we understand Sanders' argument, he is contending that Lutz and Garrett unjustifiably provoked Sanders, despite knowledge that Sanders suffered from a stress disorder, and that subsequently Sanders was treated for stress. Sanders maintains that unjustified provocation should give grounds for liability, citing us to several cases concerning assault and battery.

■ To recover for the intentional infliction of emotional distress, it must be shown that the party's conduct was extreme and outrageous and was done with the intent to cause severe emotional distress. *Mantz v. Follingstad,* 84 N.M. 473, 480, 505 P.2d 68, 75 (Ct.App.1972). Extreme and outrageous conduct is defined as conduct "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable as a civilized community." *Id.* (citing *Restatement (Second) of Torts* § 46 (1965)). Mere provocation, without more, is inadequate, no matter how unjustified. The trial court found that Sanders did not carry his burden of showing that the conduct was extreme and outrageous and did not prove damages, a de-

---

**1.** We find Sanders' reliance on *Dyer* puzzling. Our interpretation of that case is that it stands for the proposition that the express boundaries of an easement set forth in a granting agree-

ment should be strictly adhered to, absent ambiguity. The court upheld an order allowing the grantee to remove a row of hedges because they interfered with his use of the granted easement.

termination of fact within its discretion, and we AFFIRM.

IT IS SO ORDERED.

RANSOM and MONTGOMERY, JJ., concur.