IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-077

Filing Date: June 22, 2012

Docket No. 30,312

LYLE A. DETHLEFSEN and
VERA A. DETHLEFSEN,

Plaintiffs-Appellants,

v.

WILLIAM H. WEDDLE, ARDEEN
J. WEDDLE, Individually and as
TRUSTEES OF THE WEDDLE
FAMILY REVOCABLE TRUST,
ROBERT COCHRAN, SUSAN
COCHRAN, DAN WARREN,
VON EVA WARREN, FRED
BROWN, BOB JOHNSTON, and
THE NEW MEXICO LAND
CONSERVANCY,

Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY
KEVIN SWEAZEA, District Judge

Deschamps & Kortemeier Law Offices
Stephen Karl Kortemeier
Socorro, NM

for Appellants
Fitch & Tausch, LLC
Thomas G. Fitch
Socorro, NM

for Appellees Weddle

1

**OPINION**

**HANISEE, Judge.**

**{1}**     Lyle and Vera Dethlefsen (the Dethlefsens), property owners in Sierra County, brought suit against their neighbors and interested parties, sounding in tort, contract, and declaratory judgment, primarily regarding the use of an easement and corresponding road traversing their land. Following a bench trial, the district court ruled against the Dethlefsens, finding there had been no trespass upon their property, no breach of any agreement in existence between the parties, and declaring the easement to be unambiguous in dimension and unlimited in scope. On appeal, the Dethlefsens challenge only the district court's declarations that pertain to the creation and scope of the easement, and its conclusion regarding the use of a lockable gate at the easement's point of origin. We affirm the district court's determination that an express easement was unambiguously created over both the Dethlefsen property and a neighboring tract, the Warren property. But because we separately hold that the recorded documents establishing the easement are ambiguous with respect to the easement's *scope*, and the district court did not, we reverse its decision in part. We remand to allow the admission of extrinsic evidence and consideration of the surrounding circumstances to determine the proper scope of the easement, including whether and how a lockable gate can be used at the easement's point of origin.

## I.     PROCEDURAL POSTURE

**{2}**     The four properties affected by this case are located along the eastern boundary of the Gila National Forest and collectively form the southern half of Section 17, as well as the eastern portion of Section 18 of Township 12 South, Range 8 West, N.M.P.M., Sierra County, New Mexico. The properties were all once held by the Eng family, who divided and conveyed the land, and assigned corresponding easements as follows (in chronological order):[1]

> **(1)   Cochran Property:**
> "[A] certain deed [was executed] from Kenneth S. Eng, Jr. to James R. Forrister and Kristie M. Forrister, dated [and filed for recording] August 14, 1992," for lands that included the eastern half of the southeastern quarter of Section 18. An easement quitclaim was also executed that same day by Eng to the Forristers "for the purposes of ingress and egress, and the moving of livestock, more particularly described as . . . [a]n easement along and across the existing road or any replacement of the existing road located in the S½ of Section 17 . . . ."

---

[1] For ease of identification, the properties discussed in this Opinion are each referenced by use of the current property owner's surname.

That same land and easement were sold by "Kristie M. Hawkins, formerly Kristie M. Forrister," to "Robert A. Cochran and Susan D. Cochran" on March 16, 2007.

**(2) Dethlefsen Property:**
On May 31, 1997, "A.A.T. Inc., Robert Bechtel, President, for consideration paid grant[ed] to Lyle A. Dethlefsen and Vera A. Dethlefsen" "[a] tract of land being the south one-half of the southwest one-quarter and the west one-half of the southeast one-quarter [of] Section 17 . . . , *subject to easements*, restrictions, and reservations of record, *including a fifty (50) foot wide road easement to and across said property as shown on Loftus & Co. Plat 197-97* . . . ." (Emphasis added.)

On April 7, 1999, "Kenneth S. Eng, Jr., and Caroline Eng, husband and wife, for consideration paid, grant[ed] to AAT, Inc., Robert Bechtel, President" "[a] tract of land being the south one-half of the southwest one-quarter and the west one-half of the southeast one-quarter [of] Section 17," subject to the same easement language.

**(3) Weddle Property**
"Kenneth S. Eng, as Trustee of the K.S. ENG, INC. PROFIT SHARING PLAN AND TRUST, for consideration paid, grant[ed] to William H. Weddle and Ardeen J. Weddle, Trustees of the Weddle Family Revocable Trust, dated June 23, 1998" on December 16, 2004. The same deed states "Seller grantees [sic] ingress/egress through deeded lands to property. Purchase [sic] reserves right to review other than above easement[.] Purchasers have 2 weeks to inspect survey on property after survey is completed. Purchaser recommends that any easements be in or along creek beds."

**(4) Warren Property**
"Kenneth S. Eng, Jr. And Caroline M. Eng, husband and wife for consideration paid, grant[ed] to St. Cloud Mining Company" several tracts of land, including the eastern half of the southeastern quarter of Section 17 on April 20, 2001. Notably, the deed does not contain any easement reservation language.

"St. Cloud Mining Company, for consideration paid, grant[ed] to Robert F. Johnston and Rita T. Johnston, husband and wife and Fred M. Brown and Shirley Brown, husband and wife . . . [t]he E/2 of the SE/4 of Section 17 . . . on August 29, 2001," subject to "existing and continuing mining operations and . . . easements and other rights including uninterruptable [sic] and unrestricted access to the mine site . . . ."

"Robert F. Johnston and Rita T. Johnston, husband and wife[,] and Fred M.

3

Brown and Shirley Brown, husband and wife, . . . entered into a binding Real Estate Contract with Daniel J. Warren and Von Eva Warren, husband and wife, . . . [on] August 9, 2006 for . . . [t]he E2 of the SE/4 of Section 17," subject to the same mining reservations.

The current ownership and physical relationship between the properties are depicted in the following simplified map, which is provided to assist the reader's understanding and not to define any legal rights or precise dimensions.



**{3}** The Dethlefsens filed suit on December 28, 2006, against their surrounding property owners—the Weddles, Kristie Forrister (former owner of the Cochran Property), and Bob Johnston and Fred Brown (former owners of the Warren property). The complaint was amended[2] on August 27, 2007, to include the Cochrans, the Warrens, and the New Mexico

---

[2] The complaint was amended once before and once after the August 27, 2007, amendment, but the proceedings continued based on the amendment filed on August 27, 2007.

Land Conservancy (NMLC)[3] as defendants. The court later dismissed Kristie Forrister from the case because the Dethlefsens "failed to state a claim against [her], under the [amended] complaint."[4] The Dethlefsens asserted three counts against the remaining and additional defendants: (Count One) "Breach of Agreement" regarding the Dethlefsens' right to access the Weddle property to maintain fencing between the two properties, and seeking to enforce a separate oral agreement purportedly entered into by all owners to "secure the access" to the easement with a lockable gate at its point of origin on Forest Service Road 157, (Count Two) "Action for Declaratory Relief" seeking to restrict the Weddles' and Cochrans' use of the easement to a historical fourteen-foot-wide road "approximately following Monument Creek" to be used only for limited residential and agricultural purposes, and (Count Three) "Trespass" regarding the Weddles' use of the easement for commercial purposes, including "driv[ing] cattle" and providing third-party "access for commercial hunting." After years of pre-trial litigation and several failed attempts at mediation, a bench trial on the merits was held on October 21, 2009.

{4}     At trial, the Dethlefsens' attorney sought to present Mr. Dethlefsen as the primary witness to establish the case-in-chief. But less than half an hour into Mr. Dethlefsen's direct examination, the district court began to disallow testimony regarding the circumstances surrounding the nature of the easement and gate. The court ruled that the recorded "documents [were not] ambiguous" and on that basis barred admission of the extrinsic evidence being offered.

The court stated more fully:

> My ruling on that would be the document by which Mr. Dethlefsen took title contains a reservation of an explicit fifty-foot-wide easement and that's not ambiguous . . . and that the Warren property is also subject to that same easement. The testimony that you are offering seems to be directed to

---

[3] The NMLC was granted a "Conservation Easement" by the Dethlefsens in 2004 to all of the Dethlefsen property at issue here, "for the purpose of forever conserving [the land's] natural, scenic and open space character[,] [and] wildlife habitat values[.]" The conservation easement explicitly prohibits the Dethlefsens from engaging in property uses inconsistent with "Conservation Values" as defined by the easement, including moving or paving the "existing access road." But even after the NMLC "was named as a party, it disclaimed all intent to participate, stating, in effect, that it was relying on [the Dethlefsens] to properly and adequately protect its interest."

[4] Johnston and Brown remained defendants in the case, despite also divesting their property interest by subsequent transfer (to the Warrens), because the Dethlefsens alleged that they "continue to retain a financial interest in the property." Each is unrepresented on appeal and has submitted no briefing to this Court. As well, Appellees Cochrans, Warrens and the NMLC have not participated in the proceedings on appeal.

vary or modify the terms of that written instrument.

As a result, the Dethlefsens' attorney was forced to forego his planned presentation of extrinsic evidence regarding the intended scope of the easement:

> I apologize for taking a few minutes here to . . . put this in the context of the court's . . . comments about the lack of ambiguity about the nature of the easement. As the court may well appreciate those things have taken quite a few things that I was going to go into out of consideration and so I need to regroup a little bit and if the court would . . . indulge me in a moment or two?

**{5}** Ultimately, the court accepted some extrinsic evidence, such as the recorded property deeds for the surrounding properties and several photographs of the road and gate system that was installed at the origin of the easement at Forest Service Road 157. Yet it disallowed the Dethlefsens the opportunity to further develop the record with evidence regarding the use of the road or of the common grantor's intent surrounding the initial establishment of the easement and gate. At the outset of trial, the Dethlefsens' attorney asserted that:

> There are some facts that need to be elicited regarding the intention of the parties, particularly . . . [that] of Dr. Eng, the circumstances that existed back in '92, the circumstances that gave rise to the expansion . . . of the change of the gate, from twelve to fourteen feet, and to the nature of the locking system.

The Dethlefsens' exhibit list, which includes "Kenneth Eng Letter dated August 8, 2005 to Counsel," as well as their supplemental exhibit list, which provides "[f]our pages of correspondence with Dr. Eng, including signed response from Dr. Eng," likewise anticipated allowance of extrinsic evidence during trial. Similarly, the Dethlefsens' appellate docketing statement outlines the evidence they sought to present in district court, including "testimony concerning the intent of the grantor, Dr. Eng, and the circumstances surrounding the grants and reservations."

**{6}** To support their argument that the scope of the easement traversing their subservient property was ambiguous, the Dethlefsens offered recorded documents from two of the adjoining and dominant properties—the Weddle property and the Cochran property—that contained differing easement-granting clauses. The Weddles' easement was granted within the Weddle property deed itself, while the Cochrans' easement was quitclaimed in a separate document entitled, "Easement." The language used to describe the single easement burdening the Dethlefsen property varied between the dominant property documents, and from the descriptive language used in the Dethlefsen deed and from a plat referenced therein (hereinafter, "Dethlefsen plat" or "the plat"). The variations existed despite the fact that each property conveyance originated from one common grantor. The Dethlefsens maintained that the court needed to consider each of the three easement-establishing documents, the plat, as well as the surrounding circumstances, to determine the intended

6

scope of the easement. They maintained that the easement reservation contained in the Dethlefsen deed, when compared to the Weddle deed and the Cochran easement quitclaim, is ambiguous. On the one hand, the court agreed that the Dethlefsen deed must be construed in conjunction with the dominant estates' documents of record. But it stated on the other hand that it did not "perceive that the [dominant property] documents would be able to restrict or affect the express reservation in the easement that was contained in the . . . Dethlefsen [deed]." The court admonished counsel that "[t]he argument that you're making and whatever testimony you might offer to support it would [impermissibly] vary the terms of the written instrument."

{7} As a result of its finding regarding the absence of ambiguity and the corresponding truncation of testimony, the district court entered a judgment, based only on the admitted testimony and evidence, declaring the easement rights regarding the scope of the easement as follows:

> [1] The road easement as described on the [plat] . . . and referred to in the Dethlefsens' deed is an express easement, is not ambiguous and is *not subject to any limitations or restrictions* concerning the use of the road easement.
>
> [2] The lands of the Dethlefsens and the Warrens are both subject to a 50 ft. wide road easement (the Road) running from Forest Road 157 through the lands of Warren and Dethlefsen to lands of Weddle and generally following Monument Creek as its centerline[.]
>
> [3] Neither the Dethlefsens nor the Warrens have a right to dictate the type of lock or locks to be used at the gate across the Road where it meets Forest Road 157 nor, indeed, to require that the gate be locked.

(Emphasis added.) As to Count One ("Breach of Agreement" regarding fencing and access security) and Count Three ("Trespass" regarding the Weddles' alleged commercial use of the easement), the court ruled that "[t]here has been no breach of any agreement or promise as alleged," "no trespass," "no damages incurred," and "no conduct . . . undertaken in justifiable reliance upon agreements made by any Defendant."

{8} On appeal, the Dethlefsens do not raise any assertion of error as to the district court's rulings pertaining to the alleged breach of agreement to maintain fencing set forth in Count One of the amended complaint or as to the trespass asserted in Count Three. Our review is thus confined to the district court's rulings pertaining to the gate agreement separately asserted in Count One and to the easement declarations entered pursuant to Count Two.

## II. DISCUSSION

**{9}** The Dethlefsens raise seven points on appeal,[5] which we consolidate into three: Whether the district court erred in concluding that (1) the deed and plat unambiguously reserve "a fifty (50) foot wide 'roadway' easement following Monument Creek as [the] centerline," without "any limitations or restrictions concerning use"; (2) the Dethlefsen plat created an express easement, and not an easement by implication, over the lands of Warren; and (3) neither the easement nor any oral agreement created a provision for a gate and locking system.

**Issue 1:  Whether the Grant and Reservation of the Easement Through the Dethlefsen Property Were Ambiguous in Scope[6]**

**{10}** The determination of whether language utilized to establish an easement is ambiguous as a matter of law entails the analysis of deeds and other property documents to ascertain the legal rights associated therewith.  Accordingly, our review is de novo. *Garcia v. Garcia*, 2010-NMCA-014, ¶ 17, 147 N.M. 652, 227 P.3d 621 ("We review de novo the court's resolution of an ambiguity in documents."); *see Kirkpatrick v. Introspect Healthcare Corp.*, 114 N.M. 706, 711, 845 P.2d 800, 805 (1992) ("When the resolution of the issue depends upon the interpretation of documentary evidence, this Court is in as good a position as the trial court to interpret the evidence.").

**{11}** We start our analysis by setting forth general rules of construction with respect to easements, followed by a summary of our law related to the determination of easement ambiguity.  We then apply the principles distilled from our precedent to the easement that burdens the Dethlefsen property.

**A.  Rules of Express Easement Construction**

**{12}** "An easement is distinguished from a fee, and constitutes a liberty, privilege, right,

---

[5]The Dethlefsens' brief in chief challenges the district court's determinations that (1) the easement reservation contained in the Dethlefsen deed "was unambiguous and determinative," (2) the "'roadway' easement" is fifty feet wide and follows Monument Creek as its centerline, (3) the Dethlefsen survey "created an express easement over the lands of Warren," (4) "the roadway easement . . . is not subject to any limitations or restrictions," (5) "the 'bell-housing' lock system and gate across the easement where it meets Forest Road 157 were in use as a matter of neighborly accommodation and that any party was free to disregard the same," as well as the district court's failure to (6) find the easement traversing Warren's land to be an easement by implication and (7) consider that the express grants within the Weddle deed and the Cochran easement quitclaim "were more restrictive than the reservation" in the Dethlefsen deed.

[6] This issue addresses the Dethlefsens' points of appeal numbers 1, 2, 4, and 7 as set forth in footnote 5, *supra*.

or advantage which one has in the land of another." *Kennedy v. Bond*, 80 N.M. 734, 736, 460 P.2d 809, 811 (1969). It is created by express agreement, prescription or by implication. *Herrera v. Roman Catholic Church*, 112 N.M. 717, 720, 819 P.2d 264, 267 (Ct. App. 1991). The existence of an express easement and its corresponding scope are "determined according to the intent of the parties." *Skeen v. Boyles*, 2009-NMCA-080, ¶ 18, 146 N.M. 627, 213 P.3d 531. In discerning that intent, we "place heavy emphasis . . . on the [parties'] written expressions." *City of Rio Rancho v. Amrep Sw., Inc.*, 2011-NMSC-037, ¶ 37, 150 N.M. 428, 260 P.3d 414 (omission in original) (internal quotation marks and citation omitted). Unlike contract construction, the written language of an easement should be conclusive, and consideration of extrinsic evidence is generally inappropriate. *Id.* ("[T]he legal treatment of language in a recorded plat is different than the legal treatment of language in a contract."). If, however, "the grant or reservation is ambiguous, the parties' intention must be determined from the language of the instrument as well as from the surrounding circumstances." *Sanders v. Lutz*, 109 N.M. 193, 194-95, 784 P.2d 12, 13-14 (1989).

**{13}**　Our appellate courts have allowed consideration of extrinsic evidence to resolve ambiguities in easements under several notable circumstances. First, when necessary terms are omitted, our courts have found ambiguity and considered outside evidence. *See, e.g.*, *Martinez v. Martinez*, 93 N.M. 673, 675-76, 604 P.2d 366, 368-69 (1979) (holding that a "right of ingress and egress" was sufficiently certain and definite to create an easement, but remanding for "a determination of the location of appellant's easement" based on the parties' behavior, where that term was omitted from the granting language); *Skeen*, 2009-NMCA-080, ¶ 22 (following the rule that "'[i]f the granting instrument does not specify whether the easement is appurtenant or in gross, the court decides from the surrounding circumstances'" (quoting *Luevano v. Group One*, 108 N.M. 774, 777, 779 P.2d 552, 555 (Ct. App. 1989)); *Vill. of Wagon Mound v. Mora Trust*, 2003-NMCA-035, ¶¶ 46-47, 50-51, 133 N.M. 373, 62 P.3d 1255 (recognizing the validity of a "floating easement" and considering evidence of actual usage where "documents lack a specific description of the actual location of the easement").

**{14}**　Second, our courts will consider surrounding circumstances when the terms of an easement are subject to more than a single reasonable construction. *Cox v. Hanlen*, 1998-NMCA-015, ¶ 29, 124 N.M. 529, 953 P.2d 294 (noting that "[t]he district court did not err in going beyond the literal language of the deed" in construing the reservation language, "[s]ubject to . . . a 7 foot utility and ditch easement," because it was uncertain "whether the seven-foot limitation applie[d] to both the utility and ditch easements or only to use for utility purposes" (first alteration and omission in original) (internal quotation marks omitted)); *Quintana v. Knowles*, 115 N.M. 360, 363, 851 P.2d 482, 485 (Ct. App. 1993) (concluding that the survey language, "'existing 30-foot access *and* utility easement . . . [did] not make clear the width of either the road or the utility easement'" (emphasis added)); *accord Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 12, 138 N.M. 477, 122 P.3d 844 (recognizing that ambiguity exists when provisions are "reasonably and fairly susceptible to two constructions").

9

**{15}** Third, our courts review extrinsic evidence to resolve conflicting terms of an easement. In *Sanders* for example, the New Mexico Supreme Court determined that even though the easement was otherwise expressly "laid out with square corners," it was nonetheless ambiguous because those dimensions prevented the easement from being "used as a roadway," which was its express purpose. 109 N.M. at 196, 784 P.2d at 15. The Court therefore affirmed the district court's decision to review extrinsic evidence to resolve the conflict and revise the written terms accordingly. *Id*.

**{16}** And last, evidence beyond the documentary confines is admissible when the granting language is not itself technically accurate. *Camino Sin Pasada Neighborhood Ass'n v. Rockstroh*, 119 N.M. 212, 214, 889 P.2d 247, 249 (Ct. App. 1994) (holding that the use of the phrase "subject to," rather than "grant" or "reservation," to create an easement was sufficiently ambiguous to justify consideration of "the surrounding circumstances").

**{17}** We also note that a preference within our case law exists to narrowly construe rights created by an easement. *Walker v. United States*, 2007-NMSC-038, ¶ 49, 142 N.M. 45, 162 P.3d 882 ("In New Mexico, the scope of an easement, or right-of-way, is narrow and is measured by the 'nature and purpose of the easement.'" (citation omitted)). The New Mexico Supreme Court has noted that the "law is jealous of easement claims, and the burden is on the party asserting such a claim to prove it clearly." *Amoco Prod. Co. v. Sims*, 97 N.M. 324, 325, 639 P.2d 1178, 1179 (1981) (internal quotation marks and citation omitted). Against this backdrop, we address the language used in the Dethlefsen deed to determine whether an ambiguity exists.

**B.      Application of Easement Construction Rules to the Dethlefsen Deed**

**{18}** The Dethlefsen deed, which was recorded in 1997, conveyed a tract of land in fee "subject to easements, restrictions, and reservations of record, including a fifty (50) foot wide road easement to and across said property as shown on Loftus & Co. Plat 197-97, filed for record with the Sierra County Clerk." The referenced plat, which was also recorded in 1997, portrays the easement visually and includes both a written description and relevant labels associated with the easement. The plat shows the easement as generally running from east to west, beginning at an unidentified Forest Service road, traversing the property of Johnston/Brown (now the Warren property) and then the Dethlefsen property, and connecting with the Weddle property. To the west of the Weddle property lies the Forrister (now the Cochran) property, but the plat does not show the easement connecting to the Cochran property.[7] The written description contains language identical to the deed quoted

---

[7] Although the easement does not visually extend to the Cochran property on the Dethlefsen plat, all parties appear to accept that the easement in fact connects to the Cochran property. That view is supported by the easement-granting clause contained in the Cochran deed—"[a]n easement along and across the existing road or any replacement of the existing road located in the S½ of Section 17." Similarly, the district court noted in its findings and

above. But the plat labels describe the easement as follows: "ROAD & 50' WIDE EASEMENT FOLLOWS APPROX. C/L OF MONUMENT CREEK" and "EASEMENT EXTENDS TO FOREST SERVICE ROAD."

**{19}** While we agree with the district court that these documents unambiguously reserve at least a fifty-foot-wide easement over the Dethlefsen property, we nonetheless conclude that the *scope* of the easement is ambiguous as a matter of law because it omits necessary terms and because the included terms are subject to more than one reasonable construction. Specifically, the easement fails to disclose the following terms necessary to an understanding of precisely what was conveyed: (1) the nature and purpose of the easement, (2) an identification of each of the dominant estate holders, and (3) its duration. Although use of the term "road" in the context of easement language does denote rights of ingress and egress for vehicle use, it is not definitive as to the specific nature and purpose of the easement. And while the plat does identify neighboring tracts of land, it is unclear based solely on the Dethlefsen deed and plat which of the parties possess easement rights over the Dethlefsen property.

**{20}** Also with respect to the easement's dimensions, which the deed and plat establish as "fifty feet," it is contextually unclear what exactly has been reserved. The language used in the Dethlefsen deed—"fifty (50) foot wide road easement"—and the Dethlefsen plat—"ROAD & 50' WIDE EASEMENT"—can be construed as either a fifty-foot wide roadway, the entirety of which can be graded or paved; a fifty-foot-wide easement, within which a typically sized roadway can be placed; or a fifty-foot-wide easement and an additional road of undefined dimension, not necessarily within the easement boundaries. Under the *Cox* analysis, which noted alternative constructions of the "7 foot utility *and* ditch easement," the district court here should have gone beyond the literal language to include consideration of the parties' actual use and grantor intent to resolve the conflicting constructions. 1998-NMCA-015, ¶ 29 (emphasis added).

**{21}** The width of the road, if established at fifty feet, is also notably peculiar in such a rural setting. Historically, our courts have addressed private ingress and egress roadway easements of widths considerably less than fifty feet. *Dyer v. Compere*, 41 N.M. 716, 718, 73 P.2d 1356, 1357 (1937) (construing easement language creating "a roadway 8 feet in width"); *Redman-Tafoya v. Armijo*, 2006-NMCA-011, ¶ 3, 138 N.M. 836, 126 P.3d 1200 (construing a "five foot wide ingress, egress . . . easement"); *Maloney v. Wreyford*, 111 N.M. 221, 223-25, 804 P.2d 412, 414-16 (Ct. App. 1990) (determining that, in the context of a prescriptive easement, the roadway was only sixteen feet wide based on actual use despite deed language describing "a fifty (50) foot access"). And despite the statutory mandate requiring public highways to be "sixty feet in width," NMSA 1978, § 67-5-2 (1905), public highways created by prescription are often recognized as being far narrower. *State ex rel.*

---

conclusions that "[a]n extension of the Road continues in westerly [sic] direction through the Weddles' land to the Cochrans' land."

11

*Baxter v. Egolf*, 107 N.M. 315, 318-19, 757 P.2d 371, 374-75 (Ct. App. 1988) (declining to apply Section 67-5-2 to State Road 22 because the use of the road established its width at eighteen feet rather than sixty).

**{22}**    Equally unclear is whether the roadway, the easement, or both follow the centerline of Monument Creek. The lack of a definite location leads to an ambiguity similar to that identified in *Vill. of Wagon Mound* and *Martinez*, where because "the documents lack[ed] a specific description of the actual location of the easement," *Vill. of Wagon Mound*, 2003-NMCA-035, ¶ 46, "[t]he parties' behavior [could] furnish the scope or location of the missing details[.]" *Martinez*, 93 N.M. at 676, 604 P.2d at 369.

**{23}**    In contrast to the language used in the Dethlefsen deed and plat and to those above-cited instances where our courts have declared easement language to be ambiguous, the following cases serve as examples of unambiguous easement language. In *Brooks v. Tanner*, 101 N.M. 203, 206, 680 P.2d 343, 346 (1984), the examined language plainly answered all pertinent questions with regard to scope:

> SUBJECT also to a road easement granted to Hazel Calverley along and over the Southerly twelve (12') feet of the above described property, recorded in Book D-598, page 80, Records of Bernalillo County, New Mexico; and Owner hereby reserves an easement for road purposes over the Southerly twelve (12') feet of the above described property for use in connection with that portion of Lots 140 and 141 of Monticello and not included in this sale and for ingress and egress from his property to Monticello Drive which easement shall be left open.

Similarly, each of the easements described in *City of Rio Rancho* and *Dyer* unambiguously provide the requisite information to answer the legal questions presented. *City of Rio Rancho*, 2011-NMSC-037, ¶ 42 (holding that "the recorded plat unambiguously grant[ed] a drainage easement to the City," as opposed to an open space easement); *Dyer*, 41 N.M. at 719, 73 P.2d at 1359 ("[W]e find a specific reservation of an easement in the form of a right of way 'eight feet in width . . . along the north line of the [property].'" (omission in original)).

**{24}**    We also note that the ambiguities apparent in the Dethlefsen deed and plat are not resolved by the recorded deeds of the lands surrounding the Dethlefsen property. Of those recorded documents accepted by the district court, only two describe having easements over the Dethlefsen property—the Weddle deed and the Cochran easement quitclaim. And neither document locates or even references the easement in wording consistent with each other or with the Dethlefsen deed or the expressly incorporated Dethlefsen plat. The Weddle deed recommends that the easement be "in or along creek beds," while the Cochran easement quitclaim locates the easement along "the existing road or any replacement [thereof.]" While both descriptions could indicate a roadway along Monument Creek, as referenced in the Dethlefsen deed and plat, neither definitively does so. As expressed by the

New Mexico Supreme Court in *Sanders*, where the recorded documentary terms do not agree, the court must look to extrinsic evidence to resolve the conflict. 109 N.M. at 196, 784 P.2d at 15 ("In the present case . . . the instrument is ambiguous [and as a result, we] hold that the trial court properly acted . . . by determining the intent of the parties and revising the written instrument accordingly.").

**{25}** Similarly, neither document specifies a width or a consistent specific use for the road, or whether the easement is appurtenant or in gross. The Cochran easement quitclaim specifies that it is "for the purposes of ingress and egress, and the moving of livestock." But the Weddle deed states only that "Seller grantees [sic] ingress/egress through deeded lands to property." And the reservation language in the Dethlefsen deed provides no purpose at all. While we recognize that differing uses of an easement and road may be granted to different dominant property owners, based on the inconsistency between these documents we cannot conclude that the nature and purpose of the road has been clearly defined. We also note the incongruence between the normal use associated with a roadway and the differently paced and dimensional movement of livestock. The consideration of the related documents of record, absent the illumination of surrounding circumstances, advances us no closer to a definitive explanation of the full scope of the Dethlefsen easement that is the subject of the declaration action. Thus we determine, based on our analysis of the documents of record and in accord with our precedent, that the scope of the easement here is ambiguous.

**Issue 2:       Whether the Warren Property Is Subject to an Express Easement[8]**

**{26}** The district court entered findings that "[t]he road easement as described on the Loftus & Co. survey plat No. 197-97 . . . and referred to in the Dethlefsens' deed is an express easement," and "runs from Forest Road 157 through the lands of Warren and Dethlefsen to lands of Weddle." At trial, the district court reasoned that since the Warren property was still held by the common grantor at the time the Dethlefsen property was surveyed, the Dethlefsen deed and plat, which depicted the easement traversing the Warren property, created an express easement over the Warren property as well. The court found that "[t]he Warrens also knew or should have known in the exercise of reasonable diligence that their land was burdened with a fifty ft. wide road easement, the Road, when they purchased their land."

**{27}** The Dethlefsens contend on appeal that the district court erred when it concluded that the Dethlefsen plat created an express easement over the Warren property. The Dethlefsens make this argument pursuant to their understanding that an implied easement is defined by and limited to reasonable necessity. In the Dethlefsens' view, "reasonable necessity" in this context "may be less than a fifty[-]foot[-]wide road." The Dethlefsens contend that if the easement over the lands of Warren is limited to reasonable necessity, then the Cochrans and

---

[8] This issue addresses the Dethlefsens' points of appeal numbers 3 and 6 as set forth in footnote 5, *supra*.

the Weddles "cannot benefit from a fifty foot wide road easement over the lands of Dethlefsen." Because we hold that the district court did not err in determining that the Dethlefsen plat created an express easement over the lands of Warren, we do not consider the substance of the Dethlefsens' argument in this regard.

{28}    We review a determination of whether an express easement has been created for sufficiency of the evidence. *Camino Sin Pasada*, 119 N.M. at 215-16, 889 P.2d at 250-51 (applying the substantial evidence standard to determine whether "[t]he trial court could properly find that there was sufficient evidence of grantor intent" to create an express easement). "[T]he prevailing rule in New Mexico is that no particular words of grant are necessary to create an easement. Any words which clearly *show intention to grant* an easement are sufficient, provided the language is certain and definite in its term." *Id.* at 214, 889 P.2d at 249 (alteration, internal quotation marks, and citation omitted).

{29}    Here, the Dethlefsen deed explicitly states that the Dethlefsen property "is subject to easements, restrictions, and reservations of record, including a fifty (50) foot wide road easement *to and across* said property as shown on Loftus & Co. Plat 197-97 . . . ." (Emphasis added.)  A fair reading of that clause indicates an intent to both  reserve an easement "across" the Dethlefsen property and grant easement access "to" the Dethlefsen property.  Additionally, the plat attached to the Dethlefsens' deed clearly shows the easement extending across the Warren property and connecting with Forest Service Road 157.  The plat even notes that "EASEMENT EXTENDS TO FOREST SERVICE ROAD." Finally, the Warrens' chain of title demonstrates that at the time the easement was reserved in the Dethlefsen deed and plat, the Warren property was still owned by Eng, the same grantor that devised the Dethlefsen deed and plat.

{30}    Under these circumstances and pursuant to our substantial evidence review, the district court could properly find sufficient evidence of grantor intent to create an express easement over the Warren property. *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct. App. 1986) ("The question is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached."). We recognize, however, that while the district court was correct insofar as the Warren property is burdened by an express easement by virtue of the Dethlefsen deed and plat, the nature and scope of the easement necessarily suffers from the same ambiguities identified above. *See* Issue 1, Part B, ¶¶ 18-25, *supra*. Because we hold there was sufficient evidence for the district court to determine the existence of an express easement, it is not necessary for us to address the Dethlefsens' argument that the easement is created by implication. We also do not address the Weddles' argument that the "Dethlefsens do not have standing to challenge a road over Warrens' land which the Warrens acknowledge" because the Weddles offered no legal authority in support of the argument. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that where a party cites no authority to support an argument, we may assume no such authority exists). Thus, we affirm the district court's holding that an express easement exists over the Warren property. But pursuant to our analysis set forth in "Issue 1," we conclude that the nature and scope of the easement

14

must be determined following the admission and consideration of extrinsic evidence on remand.

**Issue 3:** **Whether the Easement or any Oral Agreement Provide for the Use of a Lockable Gate[9]**

**{31}** The Dethlefsens' final assertion on appeal challenges the district court's declaration that "[t]here are no restrictions or limitations on the use of the said road easement through the lands of Dethlefsen and Warren," and "there has been no breach of any agreement or promise" to maintain a lockable gate. The Dethlefsens' argument at trial attempting to legally establish the gate and locking system at Forest Service Road 157 was two-fold: First, pursuant to Count One of the complaint, the Dethlefsens alleged that there was an oral agreement between the parties to use a fourteen-foot gate and bell-housing lock. We decline to review the first prong of the Dethlefsens' argument, as Count One was dismissed by the district court and the Dethlefsens elected not to challenge that determination on appeal.

**{32}** Second, pursuant to Count Two of the complaint, the Dethlefsens sought a declaratory judgment regarding "whether the use of a bell lock [was] a reasonable restriction by [the Dethlefsens] to further their security and still permit neighbor's use[.]" Additionally in Count Two, the Dethlefsens requested the court to declare that "Defendants Johnston, Brown, [and] Warren . . . shall consent to all reasonable restrictions for use of the easement offered by [the Dethlefsens] and that the Dethlefsens had "the right to restrict access to the easement to neighboring landowners[] only, with reasonable security measure[.]" We interpret the Dethlefsens' claim to be that the easement implicitly included the use of a 14-foot gate with a single bell-lock and limited keys based on the surrounding circumstances. The particular factual allegations contained in the Dethlefsens' complaint in regard to the foregoing were the following:

> 10. The Dethlefsens, Defendants Weddle, and Defendant Cochran all rely on legal and physical access to their properties from Forest Road 157, by an easement across the property previously owned by Defendants Johnston and Brown and now owned by Defendants Warren.
>
> . . . .
>
> 12. In approximately June of 1992, prior to any Defendants purchasing their respective property, Kenneth Eng, . . . the predecessor in interest to all of the parties as to their respective real property interests at issue herein, installed a locked gate preventing access to the easement at approximately the entrance to the property now owned by Defendants

---

[9] This issue addresses the Dethlefsens' points of appeal numbers 4 and 5 as set forth in footnote 5, *supra*.

Warren (hereinafter the "common gate").

13. After Defendants Weddle, former property owner Forrister, and the Dethlefsens purchased their properties from Dr. Eng, in approximately 1998, these parties and Dr. Eng agreed to install a single bell lock on a fourteen foot . . . wide gate across the entrance to the easement.

. . . .

16. The predecessors in interest to Defendants Johnston and Brown and to Defendants Warren consented to installation of the improved gate and lock and to a system to limit and control keys for the new gate.

17. The Dethlefsens constructed a residence on their property, in material reliance on the agreement to maintain the secure new gate with a bell lock and limited keys.

18. After the Dethlefsens constructed completed construction of their residence, they changed the lock for the new gate and re-issued keys to all the parties to the agreement, to ensure continued security for their residence.

19. Defendants Weddle rejected the keys offered by the Dethlefsens, and added additional locks to the new gate with a chain outside the bell, exposed to the public at large.

. . . .

21. Defendants Johnston and Brown purchased their property with the gated, locked access and controlled key procedures in place for the new common gate.

. . . .

24. Defendants Weddle have provided public access for commercial hunting on their properties, requiring public use of the private easement burdening the Dethlefsens' property.

. . . .

26. Defendants Johnston and Brown also provided public access for commerical hunting on their properties, and required that the gates be left unlocked, compromising the security of the Dethlefsens.

{33}  At trial, the Dethlefsens sought to present Mr. Dethlefsen's testimony regarding the

16

understanding that existed between Dr. Eng (prior to his having sold the Warren property) and Mr. Dethlefsen regarding the gate and the bell lock. Mr. Dethlefsen's testimony in this regard was excluded as hearsay. Further, although the court permitted Mr. Dethlefsen to testify as to his agreement and understanding with Mr. Weddle regarding the gate at Forest Road 157 and the use of a bell lock, the court ruled that whatever oral agreement the parties made years after the grant and reservation of the easement was invalid under "the rules of property that require interests in land to be in writing to be enforceable." The court further explained that, in its view, the testimony regarding the gate and the bell lock was an attempt to vary or modify the terms of the written instrument which, on its face, did not provide for a gated and locked easement." The Dethlefsens likewise elected not to challenge that legal determination.

**{34}**    We thus focus our review only on the second prong of the Dethlefsens' gate argument: that the nature of the easement at the time it was established contained an implicit provision for a lockable gate to exist at the intersection of the easement and Forest Service Road 157, based on the ambiguity of the easement documents and the initial presence of a locked gate at that point.

**{35}**    As with the scope of the easement generally, the district court refused to consider extrinsic evidence with respect to the locked gate based upon its finding of an absence of ambiguity in the Dethlefsen deed and plat. But none of the pertinent easement language in the appellate record contains a provision allowing or prohibiting the use of lockable gates. The argument the Dethlefsens wished to assert, and offer evidence at trial in support of, was that a locked gate existed at the easement's point of origin *prior* to the easement reservation in the Dethlefsens' deed and plat. Under the same case law cited above, we hold that the documents that both create and reference the easement are ambiguous—indeed, silent—as to the inclusion of a lockable gate on the easement at any location. *See* Issue 1, Part A, ¶ 13 & Part B, ¶ 22, *supra*. We conclude again that extrinsic evidence, as a tool to discern the grantor's intent, must be admitted and employed by the district court in its consideration of whether the easement contemplated the use of a lockable gate.

## III.    CONCLUSION

**{36}**    Based on the foregoing, we affirm in part and reverse in part the judgment of the district court. We affirm the determination that an express, fifty-foot-wide easement and road of some undetermined dimension burdens both the Dethlefsen and Warren properties. But we reverse the declaration that "[t]here are no restrictions or limitations on the use of the . . . easement," including its application to both the scope of the easement and the use of a lockable gate at the easement's point of origin. We conclude that the recorded property documents are ambiguous with respect to the width of the road, the location of the road within—or separate from—the fifty-foot-wide easement, the use, nature, and purpose of the road, and the permissibility of a lockable gate. We remand for admission and consideration of all relevant extrinsic evidence to determine the proper scope and use of the easement as intended by the common grantor, including a determination of the history and use of a

locked gate at Forest Service Road 157.

**{37}    IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**

**Topic Index for _Dethlefsen v. Weddle_, Docket No. 30,312**

**CONTRACT**
Ambiguous Contracts
Breach
Statute of Frauds

**EVIDENCE**
Extrinsic Evidence

**PROPERTY**
Easement