This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**LYLE A. DETHLEFSEN and**
**VERA A. DETHLEFSEN**,

     Plaintiffs-Appellants,

v.                                                        **Nos. 33,540 & 33,660**
                                                              **(Consolidated)**

**WILLIAM H. WEDDLE, ARDEEN J. WEDDLE**
**Individually and as TRUSTEES OF THE WEDDLE**
**FAMILY REVOCABLE TRUST, ROBERT COCHRAN**
**SUSAN COCHRAN, DAN WARREN, VON EVA WARREN,**
**and THE NEW MEXICO LAND CONSERVANCY,**

     Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Kevin R. Sweazea, District Judge**

Jones & Smith Law Firm LLC
J. Brian Smith
Albuquerque, NM

for Appellants

William H. Weddle
Ardeen J. Weddle
Robert Cochran
Susan Cochran
Dan Warren
Von Eva Warren

Winston , NM

Pro Se Appellees

Domenici Law Firm , P.C.

Peter V. Domenici, J.R.

Albuquerque, NM

for Appellees The Weddle Family Revokable Trust

A. Blair Dunn

Alonzo Maestas

Albuquerque, NM

for Appellees New Mexico Land Conservancy and Amicus Curiae

**MEMORANDUM OPINION**

**VIGIL, Chief Judge.**

{1}     This case comes before us for the second time. In the prior appeal, *Dethlefsen v. Weddle*, 2012-NMCA-077, ¶ 36, 284 P.3d 452, we affirmed the district court's judgment "that an express, fifty-foot wide easement and road of some undetermined dimension burdens both the Dethlefsen and Warren Properties." However, we concluded that "the recorded property documents are ambiguous with respect to the width of the road, the location of the road within—or separate from—the fifty-foot wide easement, the use, the nature, and purpose of the road, and the permissibility of a lockable gate." *Id*. We therefore remanded "for admission and consideration of all relevant extrinsic evidence to determine the proper scope and use of the easement as intended by the common grantor, including a determination of the history and use of

2

a locked gate at Forest Service Road 157." *Id*. For the reasons that follow, we affirm the district court.

**DISCUSSION**

{2}     Following a bench trial of two-and-a half days of testimony, the admission of close to fifty exhibits, and a visit to the property, the district court determined: (1) the easement is fifty feet in width across the Dethlefsen and Warren lands; (2) the fifty-foot width of the easement is measured as twenty-five feet to either side from the centerline of Monument Creek that runs through the Dethlefsens' property; (3) that "[w]ithin said easements, the size of the traveled and maintained roadway is the amount reasonably necessary for the uses that are intended, which is generally twenty feet, more or less, which may be slightly more around corners"; (4) that the Cochrans' easement includes ingress and egress and the movement of livestock; (5) that the Weddles' easement is limited to ingress and egress, but not to a specific vehicle type; and (6) that a locked gate constitutes an unreasonable restriction on the easement and that the Dethlefsens cannot require that the gate remain locked at all times.

{3}     The Dethlefsens appeal on three grounds: (1) that substantial evidence does not support the finding that the size of the traveled and maintained roadway is twenty feet, more or less, and that ingress and egress is not limited to a specific type of vehicle type and may include vehicles that are wider than the present existing gate; (2) that the district court erred in finding that a locked gate constitutes an unreasonable

restriction on the easement and that the gate must remain unlocked; and (3) that the district court erred in awarding the Weddles' costs as "prevailing parties."

**{4}** We address each argument in turn. Because this is a memorandum opinion, and because the parties are familiar with the facts and procedural history of the case, it is unnecessary for us to set them forth, except as required for our analysis.

**1.      Substantial Evidence of Roadway Width and Vehicle Size**

**{5}** The Dethlefsens contend that "the road should be no more than fourteen feet in width as limited by the access gate and the historic width and uses of the road and what is reasonable and necessary for the uses of the road under the circumstances." The Dethlefsens contend that the judgment of the district court to the contrary is not supported by substantial evidence and is contrary to law. We disagree.

**{6}** In the prior appeal we determined that the recorded property documents are ambiguous with respect to the width and location of the road and the use, nature, and purpose of the road. Hence, the district court was faced with determining the meaning of the easements as questions of fact. *See Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 13, 114 N.M. 778, 845 P.2d 1232 ("Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact."); *see also* 28A C.J.S. Easements § 189 (2015) ("The extent of the right of an easement is a question of fact[.]").

4

**{7}** "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658 (internal quotation marks and citation omitted). "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Taxation & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted). "We will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.* (alteration, internal quotation marks, and citation omitted). "In determining whether or not there is substantial evidence to support the trial court's findings, we look only at the evidence favorable to the appellees." *Robertson v. Carmel Builders Real Estate*, 2004-NMCA-056, ¶ 28, 135 N.M. 641, 92 P.3d 653.

**{8}** The intent of the parties determines the existence and scope of an easement. *Mayer v. Smith*, 2015-NMCA-060, ¶ 11, 350 P.3d 1191, *cert. denied sub nom. Mayer v. Jones*, 2015-NMCERT-004, 348 P.3d 694. If the reservation or grant is ambiguous, "the parties' intention must be determined from the language of the instrument as well as from the surrounding circumstances." *Sanders v. Lutz*, 1989-NMSC-076, ¶ 8, 109 N.M. 193, 784 P.2d 12. "[T]he scope of an easement, or right-of-way, is narrow and is measured by the nature and purpose of the easement." *Walker v. United States*, 2007-NMSC-038, ¶ 49, 142 N.M. 45, 162 P.3d 882 (internal quotation marks and

5

citation omitted). "The easement holder's right to use the property is limited to the particular purpose for which the easement was created." *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 33, 150 N.M. 428, 260 P.3d 414. An easement holder "is entitled to make only the uses reasonably necessary for the specified purpose." *Id.* (internal quotation marks and citation omitted); *see* 28A C.J.S. Easements § 215 (2015) ("[A]n easement holder is only entitled to do what is 'reasonably necessary' to fairly enjoy the rights that were expressly granted[.]").

**{9}** The Dethlefsens do not dispute the existence of the fifty-foot easement or its location; the Dethlefsens only dispute the width of the roadway within the easement. According to the Dethlefsens, the road historically has been a two-track road—a single lane—where the width is eight to fourteen feet, unsurfaced. The Dethlefsens contend that the roadway should be no greater than the historic width of fourteen feet, which is reasonable and necessary for the uses under these circumstances. The evidence supports the district court's findings to the contrary.

**{10}** The fifty-foot width of the easement is measured as twenty-five feet to either side from the centerline of Monument Creek that runs through the Dethlefsen property. Thus, the district court reasoned that the location and size of the road depends on the conditions of the ground and the environment. The road is intertwined with the creek bottom at specific sections and closely located near the creek in others. Kristine Hawkins (Hawkins), the previous owner of the Cochran property for fourteen

years and the first person to purchase property from original grantor Kenneth Eng (Eng), testified that she would drive out of the creek for a sturdier surface when water was running through the creek. The water from the creek would change directions from one year to the next and Hawkins would need to move around depending on the flow of the water. Hawkins sometimes could not even drive on the road on certain occasions due to the water, declaring her access as impassable. Dan Warren, current owner of the Warren property, testified that such floods are not unusual in the area. Prior to the bench trial, another flood occurred.

{11} There is also evidence that other pathways have been developed on the original road, causing the road easement not to be a two-track road. William Weddle , current owner of the Weddle property, testified that certain areas within the creek had "well worn" paths when Weddle first observed the area. Hawkins gave further support by testifying that the roadway has dual pathways in which the two paths are the existing roadway. Eng testified in his deposition that he would not describe the road easement as a two-track road. The Dethlefsens even admitted that the current road has two pathways beginning at the gate at the time the district court judge conducted the second site visit. Additional testimony from Weddle demonstrates that the road that "come[s] off" Warren's property in 1996 was approximately twenty-feet wide. A previous path on the road easement was sixteen-feet wide.

{12} Another natural element also impedes the property owner's ability to access the road easement. Hawkins testified that she encountered overhanging trees with large branches on the road. Hawkins would need to cut the branches to avoid scraping her trailers. Other branches of such size would fall on the road easement, and Hawkins would need to remove them. Weddle testified that cottonwood branches and an oak tree had fallen on the road. Dethlefsen testified that he had removed branches from trees to give access to large equipment.

{13} The district court further noted that this road easement is not simply a two-track road due to its maintenance. Hawkins testified that she brought in a D-3 bulldozer to maintain the road. Robert Cochran, current owner of the Cochran property, testified that Weddle used his tractor to straighten the road after a flood destroyed the gate between the Dethlefsen and Warren property, causing significant debris to scatter across the area. Prior to the flood, Weddle laid a considerable amount of gravel on the easement. Weddle had also leveled the roadway in 2010 because he had had guests arriving on his property.

{14} Finally, the district court concluded that Eng intended to allow property owners to transport large vehicles—beyond the width of the gate—across the easement. The district court reasoned that the survey plat, done during a transaction between Eng and the Dethlefsens and identifying a fifty-foot wide easement, was Eng's expression of his specific intent, which the Dethlefsens accepted. Eng provides support in his

8

deposition that the property owners could use the necessary amount of road in the easement to "move what they wanted to move across . . . in their normal business"; whether it was fifty, twenty, or five feet on the easement.

{15} Additional evidence shows the property owners' need to travel in vehicles greater in width than the fourteen-foot wide gate. Hawkins testified that large storage tanks would need to be transported through the easement for ranching purposes, which would not fit through the fourteen-foot gate. Weddle testified that he currently plans to continue to live on his property and build a larger house. Weddle had wanted to transport a pre-fabricated building, located at Elephant Butte, that was fifteen feet in width across his property on a sixteen-foot wide vehicle. Because Warren objected to Weddle's approach in transporting the building to his property, Weddle dissembled the building and moved the pieces on a flatbed trailer. Weddle had to make four trips with this trailer to transport all of the pieces onto his property. Dethlefsen himself admits that a D-9 bulldozer he used to build a private roadway from Monument Creek to his home, did not enter through the gate.

{16} The record demonstrates that the existence of natural elements create obstacles to ingress and egress, thereby generating different pathways for the road; that the roadway is maintained with mechanical vehicles, including bulldozers and tractors; and that Eng's intent was to allow property owners who have the need, to drive vehicles greater than the width of the gate. We therefore conclude that there is

9

substantial evidence to support the district court's findings that it is reasonably necessary that the road be twenty-feet wide, more or less, for the specific purposes of ingress and egress and to allow vehicle types to enter that are wider than the existing gate.

**2.      Substantial Evidence That Gate is To Be Unlocked**

{17}    The Dethlefsens next argue that the district court erred when it found that the locked gate at Forest Service Road 157 was an unreasonable restriction on the easement. We review whether substantial evidence supports the district court finding that the locked gate is an unreasonable restriction on the easement. *See Huff v. McClannahan*, 1976-NMCA-121*, ¶¶* 6-7, 89 N.M. 762, 557 P.2d 1111 (stating that "[w]hether the gates unreasonably interfered with [the] plaintiffs' right of passage was a question of fact").

{18}    The owner of a servient estate "may make any reasonable use desired of the land in which the easement exists." *Dyer v. Compere*, 1937-NMSC-088, ¶ 13, 41 N.M. 716, 73 P.2d 1356. "[T]he servient [estate, however], may not use [the] property in a way that obstructs the normal use of the easement." 28A C.J.S. Easements § 234 (2015). A locked gate is permitted as long as "it is necessary for the efficient use of the servient estate and it does not impose an unreasonable [restriction] upon the use of the easement." 28A C.J.S. Easements § 240 (2015); *see Huff*, 1976-NMCA-121, ¶ 5 ("[T]he servient owner may maintain a gate across the way if necessary for the use

10

of the servient estate and if the gate does not unreasonably interfere with the right of passage." (internal quotation marks and citation omitted)). We conclude that the evidence supports the district court's finding and affirm on this point as well.

{19}     Cochran described his difficulties of ingress and egress caused by the the locked gate at Forest Service Road 157. The locked gate was a problem at night, in the winter season, and during the evenings. Cochran said Forest Service Road 157 is a mile from his property. He has family, friends, and business associates who come and visit him on his property, and he tries to make arrangements to meet his guests if he knows they are coming. Otherwise, Cochran's guests have to travel down the road and ask Cochran to open the gate. At times, Cochran himself, as well as his guests, have had to walk from the gate to Cochran's property at night without a flashlight. Visitors have sometimes left because the gate was locked.

{20}     Warren also testified about difficulties he had due to the locked gate at Forest Service Road 157. According to Warren, the security on the gate and the fences connected to that gate "isolate" about one acre of Warren's land, which makes it difficult for Warren to access his own property. Warren testified that he feels his right to access his property has been constrained due to the gate, believing that his neighbors use his property as a "security buffer" for their more distant properties. After the district court asked what outcome he would desire from the court, Warren testified that he had a preference that there should not be a locked gate.

11

{21} The evidence also establishes that the property owners, who have the right of ingress and egress on the roadway, risk not having emergency vehicles travel across the easement due to the locked gate at Forest Service Road 157. According to a written statement by Nathan Pasos, Fire Chief of the Winton-Chloride Volunteer Fire Department, fire-trucks weigh at least 16.5 tons and therefore he "would not consider going off a dirt road to bypass a locked gate even . . . under optimum conditions." Weddle testified that he had a conversation with Fire Chief Pasos and discussed fire protection for Monument Creek due to the number of fires in the area. Based on Weddle's conversation with Fire Chief Pasos and this statement, Weddle concluded that the locked gate prohibits emergency vehicles from entering onto the road easement. Hawkins has had property burn in a fire, and she was worried about fires in this area because fire vehicles cannot pass through the locked gate.

{22} We conclude that the foregoing evidence supports the district court's finding that the locked gate at Forest Service Road 157 is an unreasonable restriction on the easement. Cases and other authorities cited to us by the Dethlefsens do not persuade us otherwise, as they did not require any specific determinations involving locked gates on an easement. The district court here correctly applied the law to the question of fact: whether the locked gate is an unreasonable restriction on the easement.

**3.     Weddle as the Prevailing Party**

{23} The Dethlefsens argue that the district court erred when it found that Weddle was the prevailing party pursuant to Rule 1-054(D)(1) NMRA. We review the district court's finding under an abuse of discretion standard. *See Mayeux v. Winder*, 2006-NMCA-028, ¶ 41, 139 N.M. 235, 131 P.3d 85 ("The issue we must determine is whether the trial court abused its discretion in concluding [the d]efendant was the prevailing party.") "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). "When reasons both supporting and detracting from a decision exist, there is no abuse of discretion." *In re Camino Real Envtl. Ctr. Inc.*, 2010-NMCA-057, ¶ 23, 148 N.M. 776, 242 P.3d 343.

{24} Rule 1-054(D)(1) states "[e]xcept when express provision therefor[e] is made either in a statute or in these rules, costs, other than attorney fees, shall be allowed to the prevailing party unless the court otherwise directs[.]" "A prevailing party is defined as the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Mayeux*, 2006-NMCA-028, ¶ 41 (internal quotation marks and citation omitted). A prevailing party can also be defined as "the party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." *Id.* (alteration, internal quotation marks and citation omitted).

13

{25} The issues that were tried and then remanded for resolution were: the width and location of the road; the use, nature, and purpose of the road; and the permissibility of the locked gate. *See Dethlefsen*, 2012-NMCA-077, ¶ 36. While Weddle was not one hundred percent successful on all of these issues, on the whole, Weddle prevailed on the overriding issues relating to the width of the road, whether to allow a locked gate, and use of the road for ingress and egress for any legal uses on the Weddle property. Under these circumstances, we cannot conclude that the district court committed an abuse of discretion in finding that Weddle is the prevailing party for purposes of awarding costs.

**CONCLUSION**

{26} For the foregoing reasons, we affirm the district court's findings.

{27} **IT IS SO ORDERED.**


_____

**MICHAEL E. VIGIL, Chief Judge**


**WE CONCUR:**


_____

**RODERICK T. KENNEDY, Judge**


_____

**J. MILES HANISEE, Judge**